THE INHABITANTS OF TURNER *vs.* THE INHABITANTS OF BUCK-
FIELD.

By the words *"dwells and has his home,"* in *Stat.* 1821, *ch.* 122, *sec.* 2, the legislature meant to designate some *permanent* abode, or residence with an *intention to remain,* or at least without any intention of removing.

*Assumpsit* for supplies furnished to one *Esther Smith,* a pauper, whose settlement was alleged to be in *Buckfield.*

At the trial in the Court below, before *Whitman* C. J. it was agreed that the pauper, who was then about 24 years of age, had her settlement in *Buckfield,* derived from her father, unless she had gained a new one by having her domicil in some other place at the passage of the act of *March* 21, 1821 ;—that she removed with her father from *Buckfield* to *Turner* in *March* 1813, and resided with him there till his death in *April* 1814 ;—that she continued to reside in *Turner,* in different families, except two or three months' residence in *Hebron,* till the spring of 1816, from which time, till *August* 1818, she lived in the family of *Eleazer Snell,* in *Turner* ;—that at the last mentioned date she removed, with her bed, into the family of *Samuel Jenkins,* jun. her sister's husband, in *Buckfield,* she being then pregnant with

an illegitimate child, of which she was delivered in *April* follow-
ing ;—that she removed in *Nov.* 1819, with the family of *Jenkins*
to *Hebron,* and there continued, except working a few weeks in
.*Turner,* till the last of *October* 1820 ;—she then went to her
brother's house in *Hartford,* where she remained till *Dec.* 13,
1820 ;—then to *John Keen's* house in *Turner,* till about *Feb.* 7,
1821 ;—thence to her brother's in *Hartford* ;—that she again went
to *Jenkins'* the last of *February* or early in *March,* and returned
again to her brother's on the 26th day of *March,* having sold her
bed to *Mrs. Jenkins,* in whose care she left her child ;—that she
remained two nights at her brother's, and then went to a house
in *Turner* for about eleven days, and thence to another family in
*Hartford,* where she remained till *July* following, and thence to
*Turner,* where she resided in different families till *Sept.* 1822,
when she became chargeable.

Jenkins testified that he never considered her as having a home
at his house after *October* 1820 ; and that at that time, and during
the winter following, she removed from his house her bed clothes,
trunk, and wearing apparel, leaving her bed, which was after-
wards sold to his wife.

Hereupon the counsel for the defendants contended—1st. That
under the provisions of *Stat.* 1821, *ch.* 122, the pauper had her
settlement in *Hebron,* her home being in that town at the time of
passing the act ; the manifest intent of which was to fix the set-
tlement of every citizen of the State, not within its exceptions.

2. If not,—then by the same statute her settlement is in
*Turner,* that being her home during the life of her father, she
being then a minor ; and by a fair construction of the statute that
home continued till she gained a new one.

3. That the pauper not being in *Buckfield* at the time of pass-
ing the act, she must under the statute have acquired a settle-
ment either in *Hartford, Turner,* or *Hebron* ; in one of which
towns she was at the time of its passage.

The Judge, upon this evidence, which was admitted by the
parties to be true, was of opinion that the pauper had no *home*
within the meaning of the act, on the 21st of *March* 1821, and so
instructed the jury ; who returned a verdict for the plaintiffs :

and the defendants filed exceptions pursuant to the statute in such cases provided.

*Greenleaf* and *Porter* for the plaintiffs.

*Fessenden* and *Brown* for the defendants.

MELLEN, C. J. delivered the opinion of the Court, as follows.

It appears by the bill of exceptions, that the pauper has now her settlement in *Buckfield*, derived from her father, unless since she became of age she has gained a settlement in her own right. It is contended she gained one in *Hebron*, in virtue of the statute of *1821, ch. 122.* The clause in that act, which the defendants' counsel relies upon, is in these words ;—" any person, resident " in any town, at the date of the passage of this act, (*March* 21, " 1821) who has not within one year, previous to that date, " received support or supplies from some town as a pauper, shall " be deemed to have a settlement in the town, where he then " dwells, and has his home." Numerous questions have arisen in different parts of the State, depending on the construction to be given to the provisions of the above quoted clause. Some of those questions we have already decided. The question in the present case is, what is meant by being resident in a particular town, on the 21st of *March* 1821, and there dwelling, and having a home. In many instances, it may be an inquiry of great nicety, and difficult of solution, and perhaps no general principle can be established beforehand, embracing all cases. And of course each cause must be decided on its own particular facts. Our present inquiry is, whether the pauper, in the case before us, resided, dwelt, and had her home, in the town of *Hebron*, on the day the act passed. We must give a reasonable construction to the words of the law, and proceed on the ground that the legislature intended, by the use of the expression, " dwells and has his home," to designate some permanent abode, a residence with an intention to remain, or at least without an intention of removal,— something more than the habits and life of a wanderer, who has no place where he has a right to continue, and call it and claim it as his rightful home. In the present case, we do not deem it necessary to be more definite and explicit. Our decision is con-

fined to the facts before us; and from a review of those facts, we are clearly of opinion, that the pauper can, in no legal sense, be considered as dwelling and having her home in *Hebron*, on the 21st of *March* 1821. It is true, she was in that town on that day and had been for a few days before, and for five days after. But there are no facts in the case, indicating a permanent residence or home there, but on the contrary, she seems to have been wandering from town to town, for years before the law was passed, and for months after; having no settled place of abode, but floating about in society, in that course, which friendship and sympathy directed. We are of opinion, that such a residence, as this was in *Hebron*, could never have been intended by the legislature, as a dwelling and home in *Hebron*; and the consequence is, she gained no settlement in that town, by virtue of such occasional, and as it were momentary residence. The provision of the statute does not embrace such a case as hers, and therefore her settlement in *Buckfield* still continues. We overrule the exceptions, and affirm the judgment of the Court of Common Pleas.