2001 ME 156

**Maynard L. PETTEE**

v.

**Louine YOUNG.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 2, 2001.

Decided: Nov. 9, 2001.

Sandra Hylander Collier, Catherine L. Haynes, Ellsworth, for plaintiffs.

Terence M. Harrigan, Rosalind S. Prince, Vafiades, Brountas & Kominsky, LLP, Bangor, for defendant.

Panel: RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Maynard Pettee appeals from a judgment entered in the Superior Court (Hancock County, *Hjelm, J.*), affirming a judgment of the District Court (Bar Harbor, *Gunther, J.*) in Pettee's action against Young.[1] The District Court found the deed from Young to Pettee to be ambiguous. We disagree and vacate the judgment in part.

I.

[¶ 2] Young and Pettee own adjoining properties in the Seal Harbor Village section of the town of Mt. Desert. Pettee has two buildings on his property. One is a finished cottage with full utilities and the other is an unfinished "carpenter's shop" without utilities. The first cottage has a sewer line that traveled through Young's property (including through the basement of her residence) to the main sewer line on Jordan Pond Road. The easement was not of record, but was undisputed.

[¶ 3] Pettee regularly rented the first cottage during the summer months, and periodically stayed there himself. He decided to renovate the carpenter's shop and add utilities so that he could begin renting it. The applicable zoning ordinance did not allow more than one residential building on the property, but it would allow a single building with more than one residential unit.[2] Pettee sought to solve his problem by building a "connector" between the cottage and the outbuilding so that they would be one building with two units. In order to obtain a permit to rent the building, however, Pettee still needed to install a new sewer line from the carpenter's shop to the main street. Accordingly, Pettee had his attorney draft an easement deed, which provided, in pertinent part:

> Be it known by these men present, that We, Ralph Young and Louine Young ... for One Dollar and other valuable consideration, do grant to Maynard L. Pettee and Karen K. Pettee (The Pettees) ... as joint tenants, their

---

1. In his complaint, Pettee: (1) sought a declaratory judgment holding that a deed given by Young to Pettee granted Pettee the right to lay a sewer line across her property in a location of his choosing (Count I), (2) sought compensatory damages for slander of title (Count II), and (3) sought punitive damages (Count III).

2. We make no conclusions about whether Pettee properly understood the Mt. Desert zoning ordinances or whether his solutions actually complied with the ordinances. We recite here only Pettee's understanding of the Mt. Desert zoning ordinances because it was the impetus for his later conduct.

heirs and assigns, an easement across our land on the easterly side of the Jordan Pond Road at Seal Harbor in the Town of Mount Desert, County of Hancock and State of Maine (Our land) for the purposes of i) extending overhead lines of lines of [sic] communication and electricity across Our Land from land owned by The Pettees easterly of Our Land to the public utility lines in the Jordan Pond Road and ii) laying and maintaining underground lines of sewer pipe across Our Land from land owned by The Pettees to the public sewer in the Jordan Pond Road.

The easement hereby granted is to confirm a prior easement which we granted The Pettees and to grant to The Pettees, their heirs and assigns, the right to make such adjustments and additions to the location of the overhead lines and underground pipes as they deem necessary to properly serve the land owned by The Pettees.

The Pettees, for themselves, their heirs and assigns, agree that, upon completion of and laying or maintaining of the underground line or lines which may have disturbed the surface of the earth, they will restore the grade of the earth to that which it was prior to the work undertaken.

The deed as proposed was signed by Young[3] and delivered to Pettee.[4]

[¶ 4] Pettee began renovating the carpenter's shop in the summer of 1996. Young became aware that he was renovating the shop in 1997. She became concerned about and agitated with the traffic that the construction project was creating. Young first took the matter to the Town's Zoning Board, which sided with Pettee. Young appealed that decision to the Superior Court, which affirmed the Zoning Board's decision in April 1998.

[¶ 5] In May 1998 Pettee informed Young that he was going to install the new sewer pipe through her property. Young contacted her son, Nathan Young, who was the chief of the nearby Bar Harbor Police Department, and asked him to call the Mount Desert Police Department. Nathan called Sergeant Arthur Lawrence, and Lawrence paid Pettee a visit as a result. Lawrence reported that Pettee was cooperative, and as a result of the visit from Lawrence, Pettee ceased all construction activities. After a final unsuccessful attempt to persuade Young to voluntarily allow him to install the sewer line, he instituted this litigation.

[¶ 6] The District Court found the easement deed to be ambiguous and accordingly considered extrinsic evidence of the parties' intent. The court concluded that Young had intended only to confirm the already-existing rights of the Pettees, not to give them new rights to lay additional pipes or relocate the present pipe. The court interpreted the language in the deed that referred to the laying of new pipes to allow Pettee to do what was necessary to repair or replace the pipe if it failed or needed to be replaced for some other compelling reason. Thus, the District Court entered a declaratory judgment that the deed described an easement over the present course of the sewer line and forbade Pettee from moving or expanding the line unless relocation was the only solution for some failure in the line, and also entered judgment in favor of Young on slander of title and punitive damages counts.

[¶ 7] Pettee filed an appeal with the Superior Court, which affirmed the Dis-

---

**3.** The deed was signed by Mrs. Young and her late husband.

**4.** The deed was delivered to Pettee and his then wife.

trict Court's decisions on all three counts. We affirm in part and vacate in part.

## II.

[¶ 8] The construction of a deed is a question of law that we review de novo. *Bennett v. Tracy,* 1999 ME 165, ¶ 7, 740 A.2d 571, 573. A court construing the language in a deed must give the words their "general and ordinary" meaning, *Rhoda v. Fitzpatrick,* 655 A.2d 357, 360 (Me.1995), and must first attempt to construe the language of the deed by looking only within the "four corners" of the instrument. *Rancourt v. Town of Glenburn,* 635 A.2d 964, 965 (Me.1993). If the language of the deed is unambiguous, then the court must construe the deed without considering extrinsic evidence of the intent of the parties. *Id.* If the deed is ambiguous, then the court may admit extrinsic evidence of the parties' intent. *Northern Utils., Inc. v. City of S. Portland,* 536 A.2d 1116, 1117 (Me.1988).

[¶ 9] The District Court concluded that the deed language was ambiguous for three reasons: (1) there was tension between the language indicating that the deed "confirm[ed] a prior easement" and the language in the same sentence that granted Pettee new rights, (2) the location of the easement was not stated with particularity, and (3) the phrase "adjustments and additions" was modestly worded. The reasoning of the District Court is unpersuasive and does not survive a careful parsing of the language of the deed.

[¶ 10] Although the District Court did not err in determining that the deed in question confirms the existing easement, we conclude that the deed also grants additional rights. Specifically, the sentence at issue does two separate and distinct things, and there is no conceptual problem with what it does or grammatical problems with how it does it. Indeed, the word "and" suggests that what comes before it and after will be different things, and that the clause that comes after it will do something *in addition to* confirming the prior easement. Thus, there is no tension between the two phrases, and their presence supports Pettee's broad construction of the deed.

[¶ 11] The second reason that the District Court concluded that the easement was ambiguous was that the deed did not establish with specificity the scope of the rights granted or the geographic location of the easement. Pettee counters that the language of the deed unambiguously grants him the right to lay pipes anywhere on Young's property that he deems necessary to properly serve his own.

[¶ 12] The plain language might at first support Pettee's reading of the deed, but we have been reluctant to construe a clause in a deed as unambiguously granting an *unrestricted* right merely because there is no express limitation on that right. *See Anchors v. Manter,* 1998 ME 152, ¶ 16, 714 A.2d 134, 139 (discussed in detail, *infra*); *Fine Line v. Blake,* 677 A.2d 1061, 1064 (1996) (discussed in detail, *infra*). We have even found language describing the scope of an easement to be ambiguous when the deed expressly stated that the easement was granted "for all purposes." *Saltonstall v. Cumming,* 538 A.2d 289, 290–91 (Me.1988). Nevertheless, a careful reading of our decisions shows that we have always required some reason to suppose that the absence of limiting language does not connote the absence of limits.

[¶ 13] For example, in *Fine Line,* 677 A.2d at 1065, we held that a deed was ambiguous as to the purpose of the easement granted when the deed said nothing about permissible purposes. The easement in *Fine Line* described the geographic extent of the easement in detail,

but did not state or limit the purpose of the easement. *Id.* at 1063. Because the deed did not contain an express limitation on the purposes for which the easement could be used, the trial court concluded that the easement unambiguously granted an unrestricted right of way. *Id.* We vacated the decision of the trial court, concluding that the absence of a clause indicating the purpose of the easement did not mean that the easement was unrestricted. *Id.* at 1064–65. Rather, it was an ambiguity that warranted consideration of extrinsic evidence. *Id.* at 1065. We reached this conclusion because the original deed had granted an easement that allowed access to a wooded lot at a time when there were no plans for—and the parties could not reasonably have been expected to foresee—the development of a multi-unit subdivision. *See id.* at 1064–65.

[¶ 14] We also held that the absence of a clause restricting the scope of an otherwise unrestricted right did not unambiguously grant the right without limitation or restriction in *Crispin v. Town of Scarborough*, 1999 ME 112, ¶ 32, 736 A.2d 241, 250. The easement in *Crispin* granted to the dominant estate—which was an undeveloped parcel with no plans for development at the time that the deed was signed—the right of access to "any additional lots or parcels resulting from one or more divisions of a portion or portions of the Benefitted Property." *Id.* We held that, although the easement grant did not contain a limitation on the number of parcels, it was ambiguous because it did not indicate whether the grantor anticipated a subdivision of the size proposed in the case. *Id.* What led us to decide that the deed was ambiguous was the unforeseeability of the subdivision at the time the easement was granted. The parties may have contemplated something on the scale of the proposed subdivision, but that was

not clearly indicated by the silence in the deed on the subject.

[¶ 15] While *Fine Line* and *Crispin* stand for the proposition that the absence of limiting language does not *necessarily* mean that there are no limits to the right granted, there is a significant distinction between those two cases and this case. In *Fine Line* and *Crispin*, the question was whether an easement allowed the grantee to do something that might not have been reasonably foreseeable at the time the easement was granted. The deed in this case specifically talks about utility lines and pipes, however. Indeed, from the face of the deed it is clear not only that it contemplated residential sewer lines, but that it contemplated the possibility that Pettee would need to make changes in the location of the pipes in the future. Thus, the absence of limiting language suggests the absence of a limitation much more strongly than did the absence of limiting language in the *Fine Line* and *Crispin* deeds. This might be a different case if Pettee decided to do something with this property that was completely unforeseeable when the easement was signed (like open a large business establishment). This deed clearly contemplates residential sewer lines, so the absence of limiting language does not create an ambiguity the way it did in *Fine Line* and *Crispin*.

[¶ 16] Young relies heavily on *Anchors* to support her argument that the deed is ambiguous. In *Anchors*, this court held that an easement was ambiguous when it failed to adequately define the geographical parameters of the easement. *Anchors*, ¶ 16, 714 A.2d at 139. The deed merely described the easement as "running in a general westerly direction" across the property of the defendant. *Id.*, ¶ 3, n. 2, 714 A.2d at 136. Young argues that like the deed in *Anchors*, the deed in the instant case is ambiguous because it did not

provide the location of the potential sewer lines with particularity.

[¶ 17] The facts of this case and *Anchors* are similar, but there is a critical difference between them. Unlike the deed in *Anchors,* this deed contains a provision providing a basis for determining where the lines can be placed. In contrast, the deed in *Anchors* contemplated an easement in a *discrete location* but did not identify, or provide any basis by which the parties could later fix with certainty, that location. The present deed does not share this defect because it does not contemplate a discrete location for the utility lines. The deed in this case provides explicitly that Pettee can construct a line anywhere on the property that he sees fit.

[¶ 18] The final reason that the District Court gave for finding that the deed was ambiguous was that "adjustment and modifications" was "modest phrasing." We conclude that "adjustments and modifications" is sufficiently clear to cover the placement of a new sewer pipe, notwithstanding the fact that it might be "modest."

[¶ 19] Thus, we construe this deed to grant Pettee broad discretion to decide what needs to be done to properly service his property and may lay pipes as required.[5] Because the deed is not ambiguous, it is unnecessary to consider the findings of the District Court, based on the extrinsic evidence, to assist us in interpreting it.

### III.

[¶ 20] In order to recover for slander of title, a plaintiff must prove four elements: (1) publication of a slanderous statement disparaging a claimant's title to an interest in land, (2) the statement was false, (3) the statement was made with malice or with reckless disregard of its falsity, and (4) the statement caused actual damage. *Colquhoun v. Webber,* 684 A.2d 405, 409 (Me.1996). Pettee's slander of title claim was based on Nathan Young's phone call to Sergeant Lawrence. Pettee argues that Nathan was acting as Young's agent because he called Lawrence upon her request and for her benefit.

[¶ 21] The District Court ruled in Young's favor on the slander of title action because, having concluded that Pettee did not have a right to relocate the sewer pipe, it found that the statements made by Nathan were not false. The District Court also concluded that Young would not be responsible for the actions of her son, Nathan Young. Because we vacate the District Court's holding on Count I, and also because the single comment by the District Court on Nathan Young's agency status does not dispose of this issue, we must vacate the District Court's holding on this count as well. We remand to the District Court to reconsider Count II of Pettee's complaint.

### IV.

[¶ 22] Punitive damages are available only when the plaintiff's conduct is done with "actual malice" or is "so outrageous that malice toward a person injured as a result of that conduct can be implied." *Tuttle v. Raymond,* 494 A.2d 1353, 1361 (Me.1985). The District Court's only reason for denying punitive damages was that it denied Pettee recovery on the slander of title claim. Even though we are vacating the District Court's holding in Count II, we affirm the denial of punitive damages on the basis of the undisputed

---

**5.** Pettee's discretion would necessarily be restrained by principles of reasonableness that inure in every easement. *See Gutcheon v.* *Becton,* 585 A.2d 818, 822 (Me.1991) (citing *Beckwith v. Rossi,* 157 Me. 532, 536, 175 A.2d 732, 735 (1961)).

facts. The record does not support a factual finding that Young acted with malice toward Pettee, nor does Young's conduct rise to the level of outrageousness required by *Tuttle*. Thus, we affirm the District Court's holding on Count III.

The entry is:

Judgment vacated. Remand to the Superior Court for remand to the District Court for further proceedings consistent with the opinion herein.