Lisa M. HIGGINS, Plaintiff

v.

The TJX COMPANIES, INC. and the Concord Group, Inc., D/B/A A.J. Wright, Defendants

No. CIV.04–05–P–H.

United States District Court, D. Maine.

Aug. 19, 2004.

**4**

Richard B. Slosberg, Portland, ME, for Lisa M. Higgins, Plaintiff.

Krista Green Pratt, Seyfarth Shaw, Boston, MA, Peter Bennett, Bennett Law Firm, P.A., Portland, ME, for TJX Companies Inc. and Concord Buying Group Inc., Defendants.

### DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HORNBY, District Judge.

The plaintiff, Lisa M. Higgins, has sued her former employer, The TJX Companies and the Concord Group, Inc., d/b/a A.J. Wright (hereinafter "A.J. Wright"). She claims that A.J. Wright sexually harassed and retaliated against her in violation of Title VII of the Civil Rights Act and the Maine Human Rights Act. Higgins also asserts claims for battery and intentional and negligent infliction of emotional distress. I **GRANT** A.J. Wright's motion for summary judgment.

### BACKGROUND

On its motion for summary judgment, A.J. Wright submitted a statement of material facts supported by record citations in accordance with Local Rule 56(b). Higgins responded with a so-called "Statement of Material Facts Disputed." Many of the paragraphs in Higgins' submission mirror, word for word, the paragraphs in A.J. Wright's statement of material facts. None of the paragraphs, however, admits, denies or qualifies A.J. Wright's assertions, as required by Local Rule 56(c).[1] Local Rule 56(e) provides that "[f]acts con-

---

1. Not only did Higgins fail to comply with the technical requirement of Local Rule 56(e) that each statement "begin with the designation 'Admitted,' 'Denied,' or 'Qualified,'" but she also failed to contradict a single one of A.J. Wright's assertions. For example, A.J. Wright asserted that Higgins was aware of its sexual harassment policy. Def.'s Statement of Material Fact ("SMF") ¶ 8. Nowhere in her response statement of fact did Higgins address, let alone contradict, this assertion.

tained in a supporting ... statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Since Higgins failed to controvert any of A.J. Wright's assertions, the facts stated by A.J. Wright are deemed admitted.

The A.J. Wright store, Portland, Maine, hired Higgins in May of 2002. Defendant's Statement of Material Facts ("Def.s' SMF") ¶ 1. A.J. Wright hired Higgins to work approximately 24 hours per week, though sometimes she worked more, depending on the store's staffing needs. *Id.* ¶ 3. Higgins was aware of A.J. Wright's sexual harassment policy. The policy included a process for complaining about sexual harassment. *Id.* ¶ 8.

When Higgins started working at the store in May, a male co-worker began making sexually charged comments to her. *Id.* ¶ 10. On one occasion, he put his arm around Higgins and tried to touch her leg. *Id.* ¶ 11. Some of Higgins' other co-workers observed this behavior. Plaintiff's Statement of Material Facts ("Pl.'s SMF") ¶ 10. In late May or early June, Higgins reported the male co-worker's conduct to her supervisor. Def.s' SMF ¶ 14.

Store management initiated an investigation into the conduct immediately. Managers interviewed and obtained written statements from Higgins and some of her co-workers. The worker in question was not permitted to return to the store while the investigation was pending. *Id.* ¶¶ 16, 17. Store managers posted a notice to employees stating that he would be arrested if he came to the store. *Id.* ¶ 19. A.J. Wright terminated him on June 6, 2000. *Id.* ¶ 21.

During the investigation and thereafter, the worker in question did not enter the store. However, he was seen hanging around the parking lot in front of the store. Once, he and his girlfriend con-

fronted Higgins in the parking lot and threatened to "beat her up." *Id.* ¶¶ 20–21. A.J. Wright does not own the parking lot. *Id.* ¶ 20.

Higgins' Associate Record Card ("ARC") contains several notations regarding her work performance. On June 16, 2002, Higgins was cited for "poor performance" for "not staying in her work area." *Id.* ¶ 24. Higgins does not remember which manager counseled her about staying in her work area. *Id.* ¶ 26. Higgins was also counseled by an unknown supervisor for misusing her break periods. *Id.* ¶ 29. In addition, Ms. Thibeault, one of Higgins' supervisors, counseled Higgins for leaving the fitting room unattended and for wearing open-toe shoes in violation of the company's dress code. *Id.* ¶¶ 28, 30.

Higgins claims that after she complained about the co-worker's conduct, "everything just started getting on a bad start for [her]." *Id.* ¶ 45. On June 17, 2002, after the co-worker had been fired, John Steinman was hired as a manager for the A.J. Wright store and became one of Higgins' supervisors. *Id.* ¶ 25. According to Higgins, Steinman "hollered at her" (but did not use obscene or threatening language) and walked around the store with another employee and "stared at her." *Id.* ¶¶ 46, 47. Higgins admits that Steinman yelled at other employees and treated other employees the "same way" that he treated her. *Id.* ¶ 43.

On June 30, 2002, Higgins arrived at work to find that she and one other employee were the only two employees working (other scheduled employees had "called out") *Id.* ¶ 32. Higgins was frustrated and upset because Steinman remained in his office, rather than help customers. *Id.* ¶ 34. Eventually, another employee arrived, and Higgins began working in the fitting room area. *Id.* ¶ 35. Higgins had a question about where an item belonged in

the store. She called the employee at the Service Desk to ask about it. *Id.* ¶ 36. Steinman saw Higgins on the phone and approached her to ask what was going on. When Higgins explained, Steinman told Higgins that she should have asked him, not another employee, where the item belonged. Steinman told Higgins that he was going to reduce her hours for being on the telephone. *Id.* ¶¶ 37, 38. Higgins complained that she had been working for six hours without a break because the store was short-staffed. Steinman replied that he was "doing his best" to call in more employees. *Id.* ¶ 38. Higgins then told Steinman that she was "out of here." She submitted a note to Steinman that she was quitting her job. *Id.* ¶¶ 39, 40.

## ANALYSIS

### *(1) Sexual Harassment* [2]

In cases of co-worker sexual harassment, an employer is liable if it "knew or should have known of the charged sexual harassment and failed to implement prompt and corrective action." [3] *White v. New Hampshire Dep't of Corrections*, 221 F.3d 254, 261 (1st Cir.2000) (quoting *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872 (6th Cir.1997)). It is undisputed that A.J. Wright management did not know about the harassing conduct until Higgins complained to a supervisor. Moreover, A.J. Wright immediately took appropriate corrective action by suspending the co-worker pending an investigation, banning him from the store, and ultimately terminating his employment.[4] That some of Higgins' co-workers observed the harassment does not, as Higgins argues, entitle Higgins to "an inference that [the co-worker's] actions were known to everyone in the store, including supervisors and managers . . ." Opp. Mem. at 2. The summary judgment record contains no evidence that supervisors witnessed or were made aware of the inappropriate conduct before Higgins complained about it.

If what Higgins claims is true, she was sexually harassed by a co-worker. Higgins' grievance, however, is with her harasser, not her employer. There is insufficient evidence to impose *respondeat superior* liability on A.J. Wright for sexual harassment. A.J. Wright is therefore entitled to summary judgment on Higgins' sexual harassment claim.

### *(2) Retaliation*

To prove retaliation, Higgins must show that: (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action. *E.g., Gu v. Boston Police Dep't*, 312 F.3d 6, 14 (1st Cir.2002). An adverse employment action is one that "materially change[s] the

2. Title VII and the Maine Human Rights Act ("MHRA") are interpreted using the same analytical framework. *See Forrest v. Stinson Seafood Co.*, 990 F.Supp. 41, 43–44 (D.Me. 1998) (listing Maine cases). The parties do not suggest that the Maine Human Rights Act claims are subject to a different analysis.

3. In Counts I and II of her complaint, Higgins claims that A.J. Wright discriminated against her "on the basis of sex" as well as sexual harassment. To the extent that the complaint can be construed to allege gender discrimination, A.J. Wright is entitled to summary judg-

ment. Aside from the sexual harassment allegations, there is no evidence that A.J. Wright treated Higgins differently because she is a woman.

4. Higgins faults A.J. Wright for failing to keep the co-worker out of the parking lot and therefore failing to take corrective action. She admits, however, that A.J. Wright did not own the parking lot and that A.J. Wright acted quickly in investigating and firing the co-worker. A.J. Wright's reaction to Higgins' complaint was immediate and appropriate under the circumstances.

conditions of plaintiffs' employ." *Id.* "Material changes include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.'" *Id.* (quoting *Hernandez–Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir. 1998)).

■ In this case, Higgins complains that "she was 'counseled' for a number of relatively minor infractions of A.J. Wright rules," Steinman and another employee "walked around the store together and stared at her while she working," Steinman "threatened that her hours (part-time) would be reduced," and Steinman "required [her] to put her resignation in writing."[5] Opp. Mem. at 3–4. I conclude that this alleged retaliatory conduct does not amount to an adverse employment action. Higgins does not claim that her hours were actually reduced, or her hourly wage decreased, or her job responsibilities changed after she complained about the harassment. Rather, she complains that she was counseled for violating the rules, treated with personal animus by one of her supervisors, and threatened that her hours would be reduced. These allegations, even if proven, are not enough to establish an adverse employment action. Accordingly,

A.J. Wright is entitled to summary judgment on Higgins' retaliation claims.

### (3) *Battery*

■ Maine's Workers' Compensation Act's exclusivity and immunity provisions bar an employee from pursuing civil actions against an employer for the employer's torts. *E.g., Li v. C.N. Brown Co.,* 645 A.2d 606, 607–08 (Me.1994). In Count III, Higgins asserts a claim for "intentional battery," presumably based on the co-worker's unwelcome advances. Because this claim is based upon workplace conduct, it is barred by the Workers' Compensation Act.[6]

### (4) *Emotional Distress*

In Counts V and VI, Higgins asserts claims for intentional and negligent infliction of emotional distress. To the extent that these counts are premised on workplace conduct, they are barred by the Worker's Compensation Act's exclusivity and immunity provisions. *Li v. C.N. Brown Co.,* 645 A.2d 606, 607–08 (Me. 1994). In her opposition memorandum, however, Higgins claims that A.J. Wright "inflicted emotional distress [upon her] long after she ended her employment by barring her from the store, and refusing to

**5.** Higgins also asserts that "local managers at the store refused to get other employees to assist her." Opp. Mem. at 2. However, the statements of material fact that she cites do not support this assertion. In addition, Higgins claims that, after she quit, a store manager commented that she should not be allowed to shop at the store and that her cousin. Brian Higgins, was denied employment allegedly because of his relation to her. Opp. Mem. at 3–4; Pl.'s SMF ¶¶ 36, 38. Neither the store manager's comment nor the store's refusal to hire her cousin affected Higgins' employment, however. Higgins suffered no adverse employment action.

**6.** In her complaint, Higgins claims both "intentional battery" (Count III) and "negligent

battery" (Count IV). "Certainly the concept of a negligent battery or a negligent assault is an anomalous one in a vast majority of American jurisdictions. It seems almost unquestioned law in this country that a formed intention is an essential element of assault and battery and that mere negligence is insufficient to support such an action." E.J. Spires, *Scope of limitation statutes specifically governing assault and battery,* 90 A.L.R.2d 1230, § 11 (1963). *See also* W. Keeton, Prosser and Keeton on Torts, § 9, at 41 (5th ed. 1984) ("Mere negligence ... is not enough for battery.") No Maine case recognizes the tort of "negligent battery" and I decline to recognize it now. A.J. Wright is entitled to summary judgment on Count IV.

hire her cousin." Opp. Mem. at 6. In fact, there is no record evidence that Higgins was ever "barred from" or asked to leave the A.J. Wright store. That leaves only the claim about her cousin.

 In order to recover for either intentional or negligent infliction of emotional distress, Higgins must demonstrate that she suffered "severe" or "serious" emotional distress as a result of A.J. Wright's conduct respecting her cousin. *See Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18, 22; *Gammon v. Osteopathic Hosp. of Maine*, 534 A.2d 1282, 1285 (Me.1987). Nowhere in her complaint, her memorandum, or her statement of material facts, does Higgins allege that she suffered severe emotional distress or describe the distress that she suffered as a result of A.J. Wright's decision not to hire her cousin. Moreover, to recover for intentional infliction of emotional distress, Higgins must show that A.J. Wright's conduct was "extreme and outrageous" and "regarded as atrocious [and] utterly intolerable in a civilized community." *Curtis*, 2001 ME 156 at ¶ 10, 783 A.2d 637. Failure to hire a former employee's relative, for whatever reason, simply does not rise to the level of extreme and outrageous contemplated by the caselaw. A.J. Wright is entitled to summary judgment on Counts V and VI of Higgins' complaint.

## CONCLUSION

The undisputed facts show that A.J. Wright took appropriate action as soon as Higgins complained that she was being harassed. There is therefore no ground for imposing *respondeat superior* liability on it for a co-worker's conduct. Higgins' battery claim is based entirely on workplace conduct and is therefore barred by the exclusivity provision of the Workers' Compensation Act. To the extent that the emotional distress claims arise out of workplace conduct, they are also barred by the Workers' Compensation Act. To the extent the emotional distress claims are based upon A.J. Wright's conduct after Higgins quit, there is no evidence that Higgins suffered emotional distress. Accordingly, I **GRANT** the defendant's motion for summary judgment on all counts.

**SO ORDERED.**