STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-06-305
DHM- KEN-12/10/2007

LAPOSA PROPERTY OWNERS ASSN.,

Plaintiff

v.

LINDA TODEY,

Defendant

DECISION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

JAN 2 4 2008

This case is before the court on cross-motions for summary judgment. Defendant owns property and lives[1] in the La Posa subdivision in Mount Vernon. She rents units on Lot # 6 of the subdivision on a weekly, monthly and yearly basis. The units that defendant rents out were constructed prior to 1974, have been rented each summer since 1974, and do not have insulation allowing for long-term winter rental. Defendant has advertised rentals of the property in question as a destination for country vacations, romantic weekend getaways, rental by groups of families or friends and has highlighted in advertisements use of the property's suites and cabins.[2] Defendant acquired the property with a restriction in her deed reading:

---

[1] There is no clear evidence on the subject but the court infers from all the agreed facts that defendant resides on lot #7 of the subdivision.

[2] Plaintiff objects to 12-15 of defendant's Opposition to Plaintiff's Statement of Additional of Material Facts, because in qualifying the facts outlined in the above sentence, defendant did not cite to the record. M.R. Civ. P. 56(h)(4) provides that "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statements of fact." There is no need for a separate ruling on a separate motion, because as the Advisory Committee Notes in the most recent publication of Maine's Rules of Civil Procedure note:

> The purpose of these amendments is to make Rule 56 more uniform and efficient, in particular to eliminate the practice of filing motions to strike in order to raise or preserve objections to factual assertions contained in statements of material facts filed in connection with motions for summary judgment. This practice has led to a situation where motions for summary judgment, which are often complicated enough in their own right have spawned multiple subsidiary motions and needless additional filings in the form of motions to strike and objections thereto.

Each numbered lot shall be used or occupied solely for single-family residential purposes, excepting structures on lot #6 on said Plan existing prior to 1974, which structures may be used for multi-family residential purposes but not to exceed six (6) units on said lot #6. No trade, business or commercial activity of any nature whatsoever shall be conducted on any numbered lot, provided, however, that this restriction shall not be construed to prevent the rental of any dwelling but solely for private residential purposes.

Both parties have filed summary judgment motions arguing that the above deed is unambiguous and should be construed as a matter of law in their favor.

[A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial. It is, at base, "simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding." If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law.

*Arrow Fastener Co., Inc. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 18, 917 A.2d 123, 127 (quoting *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22).

This case turns on the interpretation of a restrictive covenant in a deed. Particularly important is interpretation of the language limiting rentals of the subject property to those for "private residential purposes." Construction of a deed is a question of law. *N. Sebago Shores, LLC v. Mazzaglia*, 2007 ME 81, ¶ 13, 926 A.2d 728, 733. This court must, "first attempt to construe the language...by looking only within the 'four corners' of the instrument." *Id.* (quoting *Pettee v. Young*, 2001 ME 156, ¶ 8, 783 A.2d 637, 640). In evaluating the language of the deed, this court "should give effect to the common everyday meaning of the words in the instrument." *Id.* While restrictive covenants should be narrowly construed, this does not mean that they should be

---

Though there is no motion to strike here, it is unnecessary for the plaintiff to file a separate objection, defendant's qualifications are (in addition to lacking proper record citation) not discussions of material facts, rather legal conclusions as to the relevance of those facts asserted by plaintiff. The court has simply accepted the material facts outlined by the plaintiff as undisputed.

limited if the language is unambiguous. *See Green v. Lawrence*, 2005 ME 90, ¶ 8, 877 A.2d 1081, 1082 (citing *Naiman v. Bilodeau*, 225 A.2d 758, 759 (Me. 1967)). "If the deed is unambiguous, the court must construe the deed without considering extrinsic evidence; if the deed is ambiguous, however, the court may admit extrinsic evidence of the parties' intent." *Id.* The question of the parties' intent is a factual one ambiguity thus creates a genuine issue of material fact as to the parties' intent which this court should not answer on summary judgment. *See Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041, 1044; *see also Spottiswoode v. Levine*, 1999 ME 79, ¶ 15, 730 A.2d 166, 172; *see also VanVorhees v. Dodge*, 679 A.2d 1077, 1080 (Me. 1996); *see also June Roberts Agency, Inc. v. Venture Props., Inc.*, 676 A.2d 46, 48 (Me. 1996). Thus whether summary judgment is appropriate here for either party depends on whether the language is ambiguous. Ambiguity exists when the language "is reasonably susceptible to more than one interpretation." *Madore v. Kennebec Heights Country Club*, 2007 ME 92, ¶ 7, 926 A.2d 1180.

Predictably, the question of construction becomes a battle of dictionary definitions. The defendant cites Merriam-Webster's Online Dictionary (http://www.merriam-webster.com/dictionary) to define residential as "used as a residence by residents"; "of or relating to residence or residents"; "provided to patients residing in a facility"; "used or designed for residence or limited to residences, a residential hotel; a residential quarter, a residential college."[3]

The plaintiff on the other hand provides a definition of "residence" from the same source, "the act of dwelling in a place for some time; the act or fact of living regularly staying at or in some place for the discharge of a duty or the enjoyment of a

---

[3] The defendant also stresses the determination of Mount Vernon's CEO and the Mount Vernon land use ordinance's definition of residential. However, this is extrinsic evidence not permissible in the initial determination of whether the language is ambiguous.

benefit; the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn."

Defendant correctly notes that plaintiff chooses to define the term "residence" rather than "residential" which is the term used in the deed. This is a distinction with some meaning The noun "residence" carries with it legal concepts not present in the adjective, "residential." BLACK'S LAW DICTIONARY 1310 (7th ed. 1999) defines "residence: The act or fact of living in a given place for some time; the place where one actually lives, as distinguished from a domicile; the place where a corporation or other enterprise does business or is registered to do business; a house or other fixed abode." This comports with the statutory definitions offered by the plaintiff of "resident" and "residence."[4] Unlike "residence", BLACK's contains no definition for the adjective "residential." The question then is whether "residential" contains the same durational significance as "residence." The defendant notes that the Webster's definition of "residential" includes reference to a "residential hotel." The accommodations of a "residential hotel" are more like an apartment or a "residence" than a normal hotel, however conceptually it is similar in that the stay of an individual in such accommodations is not necessarily longer than in a normal hotel.[5]

The plaintiff points the court in the direction of *North Yarmouth v. West Gardiner*, 58 Me. 207, 210 (Me. 1870) for a support of its durational definition of "residence." Again however this deals with "residence" rather than "residential." "In the same case, as in numerous others, it is held that to establish a 'residence' within the meaning of the

---

[4] *See* 36 M.R.S.A. § 5102(5) (tax code definition of "resident individual") and 21-A M.R.S.A. 112 (election law definition of "residence for voting purposes").

[5] Though such accommodations are advertised for "extended stay" customers. *See* http://www.marriott.co.uk/Channels/globalSites/findReserve/brands/marriottExecutiveApartments.mi?country=UK;

statute, there must be 'personal presence without any present intention to depart.'" *Id.* (quoting *Turner v. Buckfield*, 3 Me. 229 (Me. 1824)).

The plaintiff also cites a decision of the Texas Appellate Court, enforcing a restriction that "No lot shall be used except for single-family residence purposes" to prohibit "renting for a period of less than ninety days and prohibits renting to anyone other than a single family." *Benard v. Humble*, 990 S.W.2d 929, 930 (Tex. App. 1999). Defendant notes two distinctions, the inclusion in the *Benard* restriction of "single-family" and its use of "residence" rather than "residential." While these distinctions are meaningful, there are some other fundamental differences that make this case of no value in drawing the parallel plaintiff seeks. The presence of Tex. Prop. Code Ann. 202.003(a) required the court to include in the "judicial toning" of "strictly constru[ing]" a restrictive covenant against the party seeking to enforce it the "strong but clear statutory language of § 202.003(a)" intending that "restrictive covenants be construed in a manner which may occasionally run hard afoul of strict common law requirements." *Id.*[6]

Plaintiff further cites a Michigan case, *O'Connor v. Resort Custom Builders, Inc.*, 591 N.W.2d 216 (Mich. 1999) which, plaintiff claims, held that a deed restricting use to residential purposes prohibited time shares or interval ownership because the time period of buyer's occupancy was too temporary to fit the definition of residence. This

---

[6] In fact, the Lone Star State's anomalous statute created the result in *Berner* in conflict with the decision that would have been made in the absence of the statute:

> The present case is a prime example of the dilemma: The deed restrictions in question do not explicitly contain language covering temporary renting of property. Were we to give construction against the drafter of the covenant, we would be required to reverse the trial court's judgment. However, understanding the mandate of §200.003(a), and paragraph II, § 1 of the deed restrictions, which provides that, "No lot shall be used except for single-family residence purposes," we must attempt to give purpose to the intended meaning of "single-family residence purposes."

*Berner*, 990 S.W.2d at 931.

case is readily distinguishable in that its holding was limited to the feature of multiple ownership uniquely common to time-shares. The Michigan Supreme Court adopted the reasoning of the circuit court. Essential in its determination was that the restriction to residential use had not been waived by short-term rentals because in the context of short term rentals "there remains a single known owner in a rental whom neighboring property owners can contact if a renter causes a problem." Thus, *O'Connor* assists the defendant in this case much more than it does the plaintiff. Further, the Michigan Supreme Court stated:

> With regard to whether plaintiffs waived the use restriction by allowing short-term rentals, we agree with the circuit court that such an alternative use is different in character and does not amount to a waiver of enforcement against interval ownership. Further defendants have not demonstrated that the occasional rentals have altered the character of the Valley View subdivision to an extent that would defeat the original purpose of the restrictions.[7]

*Id.*, 591 N.W.2d 216, 459 Mich. 335, 346.

While plaintiff provided the court a great deal of out of jurisdiction authority, it did not provide a case that this court finds particularly persuasive. The Court of Appeals of Maryland dealt with the question "whether a restrictive covenant, which requires that building lots...be used for 'single family residential purposes only,' prohibits the owners on those lots from renting their homes to residential tenants on a short term basis." *Lowden v. Bosley*, 909 A.2d 261, 262 (Md. 2006). The Court held that "the restrictive covenant is unambiguous and that it does not prohibit the short-term rental to a single family of a home." *Id.*[8] Notably, the *Lowden* covenant was more

---

[7] In this regard, it seems that the requirement of permanence of "residential purpose" is attributed to the primary owner, thus the language utilized by the court in characterizing "residence" applies to a primary owner who in their *permanent* "residential purposes" is allowed to make short-term rentals. *See id.* at 345.

[8] The trial court had denied cross-motions for summary judgment because it found the restriction ambiguous. The Court of Appeals agreed with the court's ultimate conclusion that the restriction did not apply to short-term rentals, however found that the restriction "on its face does not prohibit the short-

restrictive than the one in question here, as the covenant here excepts Lot #6 from "single-family" restrictions and explicitly states that its "business or commercial activity" restriction "shall not be construed to prevent the rental of any dwelling but solely for private residential purposes."[9] The court in *Lowden* stated "[i]n the present case, there is no prohibition on any business or commercial use or benefit. If there were such an express prohibition, our analysis would be different or the Declaration might be ambiguous." *Id.* at 268. An exception for business and commercial use does exist here, but the prohibition on "business or commercial activity...shall not be construed to prevent the rental of any dwelling but solely for private residential purposes"; thus the exception that exists here is similar to that of *Lowden* and "as long as a tenant's use of a home...is residential, a commercial benefit accruing to the landlord-owner is not prohibited." *Id.* And as the Court emphatically put it, "[t]o reiterate, there is no inherent inconsistency between a residential use by a tenant and a commercial benefit for the landlord." *Id.* Additionally, the covenant makes a clear exception for some form of rental, as in *Lowden* "there is utterly nothing in the language of the [covenant] which provides any basis for drawing a distinction between long-term rentals and short-term rentals." *Id.* at 268. The Court's logic on this matter is convincing, "at what point does

---

term rental of a defendant's home to a single family which resides in the home. Unlike the Circuit Court, we find no ambiguity with respect to this issue. Consequently, we have no occasion to consider extrinsic evidence relating to intent." *Id.* at 266.

[9] In fact, the Court found that if the rentals were excluded it would not be because of the term "residential" but because of "single-family"

> "Residential use," without more, has been consistently interpreted as meaning that the use of the property is for living purposes, or a dwelling, or a place of abode. The word "residential" has been applied to apartment buildings, fraternity houses, hotels, and bed-and-breakfasts, because such structures are used for habitation purposes. The transitory nature of such use does not defeat the residential status. What may exclude fraternity houses, hotels, motels, boarding houses, and bed and breakfasts under [the restrictive covenant] is not the "residential purposes" language of [the restrictive covenant]; instead, if they are excluded, it would be the "single family" language of [the restrictive covenant] which would accomplish such result.

*Id.* (citations omitted).

the rental of a home move from short-term to long-term: a week? a month? a season? three months? six months? one year? or several years?" *Id.*[10]

The one fathomable distinction between this case and *Lowden* is the use of the modifier "private" before "residential purposes." Plaintiff provides a definition of the modifying term, "private: belonging to or concerning an individual person, company, or interest (a private house)…"[11] Plaintiff contrasts private with its antonym "public: exposed to general view; of, relating to, or affecting all the people or the whole area of a nation or state; of or relating to business or community interests as opposed to private affairs; and accessible to or shared by all members of the community."[12]

The defendant raises an important question with regards to the public/private distinction. She claims that regardless of her advertising to the general public, it is not a place of public accommodation because she screens her tenants.[13] Nothing indicates that "private" precludes rental to short or long term tenants. This court cannot give significance to the term "private" in a linguistic vacuum. The deed was crafted to have a very clear provision providing for the existence of rentals on Lot #6 in contemplation of the deed's general restriction on commercial activity. That the whole of the deed unambiguously expresses this purpose obviates the plaintiff's rigid interpretation of

---

[10] Two more cases from other jurisdictions are cited in *Lowden*, *Pinehaven Planning Board v. Brooks*, 70 P.3d 664 (Idaho 2003) and *Mullin v. Silvercreek Condominium Owners Assoc.*, 195 S.W.3d 484 (Mo. 2006). In *Pinehaven*, the covenant limited use to "residential use" and prohibited "commercial or business venture uses", nevertheless the Idaho Supreme Court held that, "as a matter of law, the covenants are unambiguous and clearly allow the rental of residential property for profit." *Pinehaven*, 70 P.3d at 667. In *Mullin*, the Missouri Supreme Court held that a similar covenant clearly and unambiguously did not prohibit nightly rentals and opined on the meaning of "residential purposes":

> [O]ne in which people reside or dwell or which they make homes…Stated another way, the *unit owners'* use of their units and restricted common elements must be for the purpose of residing or dwelling there, or in a manner making the realty home.

*Mullin*, 195 S.W.3d at 490 (emphasis added).

[11] http://www.merriam-webster.com/dictionary/public.

[12] *Id.*

[13] Plaintiff takes issue with the word tenant because it implies a legal relationship which it argues does not here exist, though the use of the term tenant seems appropriate with reference to short or long-term rentals. *See Generally Lowden v. Bosley*, 909 A.2d 261, 262 (Md. 2006)

"private" which would seemingly preclude use of Lot #6 by anyone other than the defendant herself. Additionally, plaintiff's interpretation of the word "private" seems to give it the effect of modifying the noun "purposes." However, that would assume that "private" and "residential" are coordinate adjectives. Coordinate adjectives however are to be separated by a comma or a conjunction.[14] Thus, grammatically the order of the words is important and essentially it is the "residential purpose" and not the "purpose" itself that must be private. *See Primary Children's Hospital v. Dep't. of Health*, 993 P.2d 882, 886 n. 3 (Utah Ct. App. 1999) (quoting *Chicago Manual of Style* § 5.51 (14th ed. 1993)). Given the entire text of the restrictive covenant and persuasive authority cited in the discussion above, this court does not interpret "residential purpose" to contain the durational component which would distinguish between short and long term rentals as sought by the plaintiff. Nothing about that "residential purpose" being "private" adds a time component to this clause which clearly and unambiguously allows the holder of the deed to rent the unit. The restrictive covenant is unambiguous and does not prohibit the plaintiff's short-term rentals of her property.

The entry is:

> Defendant's motion for summary judgment is GRANTED; judgment for defendant; plaintiff's motion for summary judgment is DENIED.

Dated: December ___ *10* ___ 2007

Donald H. Marden
Justice, Superior Court

---

[14] For example, they would be coordinate and thus both modify "purposes," if the phrase was worded "private *and* residential purposes" or "private, residential purposes."

LA POSA PROPERTY OWNERS ASSN - PLAINTIFF
HERMAN MATTHIJSSEN, PRES 60 LA POSA DRIVE
MT VERNON ME 04352
Attorney for: LA POSA PROPERTY OWNERS ASSN
DANIEL W MARRA  - RETAINED 12/04/2006
MARDEN DUBORD ET AL
44 ELM STREET
PO BOX 708
WATERVILLE ME 04901-0708


vs
LINDA TODEY  - DEFENDANT
PO BOX 3,
MOUNT VERNON ME 04352
Attorney for: LINDA TODEY
BRIAN D CONDON JR - RETAINED
LAW OFFICE OF BRIAN D CONDON
126 MAIN STREET
PO BOX 169
WINTHROP ME 04364

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2006-00305


**DOCKET RECORD**


Filing Document: COMPLAINT                    Minor Case Type: DECLARATORY JUDGMENT
Filing Date: 12/04/2006

## Docket Events:

12/04/2006 FILING DOCUMENT - COMPLAINT FILED ON 12/04/2006


12/04/2006 Party(s):  LA POSA PROPERTY OWNERS ASSN
           ATTORNEY - RETAINED ENTERED ON 12/04/2006
           Plaintiff's Attorney: DANIEL W MARRA


12/04/2006 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 12/04/2006


12/07/2006 Party(s):  LINDA TODEY
           RESPONSIVE PLEADING - ANSWER FILED ON 12/06/2006
           Defendant's Attorney: BRIAN D CONDON JR


12/07/2006 Party(s):  LINDA TODEY
           ATTORNEY - RETAINED ENTERED ON 12/06/2006
           Defendant's Attorney: BRIAN D CONDON JR


12/18/2006 Party(s):  LINDA TODEY
           SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP SERVED ON 11/28/2006
           Defendant's Attorney: BRIAN D CONDON JR
           BRIAN D. CONDON, ESQ. FOR LINDA TODEY


01/05/2007 ORDER - SCHEDULING ORDER ENTERED ON 01/05/2007
           DONALD H MARDEN , JUSTICE
           ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
           PARTIES/COUNSEL


01/05/2007 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 09/05/2007


01/05/2007 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 01/05/2007

DONALD H MARDEN , JUSTICE

08/31/2007 Party(s):  LINDA TODEY
          MOTION - MOTION SUMMARY JUDGMENT FILED ON 08/30/2007
          Defendant's Attorney: BRIAN D CONDON JR
          STATEMENT OF MATERIAL FACTS, AFFIDAVIT OF LINDA TODEY AND RICHARD MARBLE, FILED.

09/24/2007 Party(s):  LA POSA PROPERTY OWNERS ASSN
          MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 09/21/2007
          Plaintiff's Attorney:  DANIEL W MARRA
          FOR RESPONSE TO MOTION FOR SUMMARY JUDGMENT.

09/28/2007 Party(s):  LA POSA PROPERTY OWNERS ASSN
          MOTION - MOTION SUMMARY JUDGMENT FILED ON 09/28/2007
          Plaintiff's Attorney:  DANIEL W MARRA
          WITH MEMORANDUM OF LAW, DRAFT ORDER, NOTICE OF HEARING

09/28/2007 Party(s):  LA POSA PROPERTY OWNERS ASSN
          OTHER FILING - OPPOSING MEMORANDUM FILED ON 09/28/2007
          Plaintiff's Attorney:  DANIEL W MARRA
          PLT'S OBJECTION TO DEF. MOTION FOR SUMMARY JUDGMENT & MEMORANDUM OF LAW

10/02/2007 Party(s):  LA POSA PROPERTY OWNERS ASSN
          MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 09/28/2007
          COPIES TO PARTIES/COUNSEL                                    HAS TIL OCTOBER
          9, 2007

10/19/2007 Party(s):  LINDA TODEY
          OTHER FILING - OPPOSING MEMORANDUM FILED ON 10/19/2007
          Defendant's Attorney: BRIAN D CONDON JR
          DEFENDANT OPPOSITION TO PLT MOTION FOR SUMMARY JUDGMENT              DEFENDANT
          OPPOSING STATMENT OF MATERIAL FACTS TO PLT ADDITIONS         11/9/07 - DEFT'S REVISED
          OPPOSING STATMENT OF MATERIAL FACTS TO PLTF'S ADDITIONS.

10/19/2007 Party(s):  LINDA TODEY
          OTHER FILING - AFFIDAVIT FILED ON 10/19/2007
          Defendant's Attorney: BRIAN D CONDON JR
          SECOND AFFIDAVIT OF LINDA TODEY

10/29/2007 Party(s):  LA POSA PROPERTY OWNERS ASSN
          OTHER FILING - OPPOSING MEMORANDUM FILED ON 10/26/2007
          Plaintiff's Attorney:  DANIEL W MARRA
          TO DEFENDANT'S OPPOSING STATEMENT OF MATERIAL FACTS TO PLAINTIFF'S ADDITIONS.

11/05/2007 HEARING - MOTION SUMMARY JUDGMENT SCHEDULED FOR 12/04/2007 @ 1:00  in Room No.  1
          DONALD H MARDEN , JUSTICE

11/16/2007 Party(s):  LA POSA PROPERTY OWNERS ASSN
          OTHER FILING - OPPOSING MEMORANDUM FILED ON 11/15/2007
          Plaintiff's Attorney:  DANIEL W MARRA
          PLTF'S OBJECTION TO DEFT'S REVISSED OPPOSING STMT OF MATERIAL FACTS

12/04/2007 HEARING - MOTION SUMMARY JUDGMENT HELD ON 12/04/2007

DONALD H MARDEN , JUSTICE
Defendant's Attorney: BRIAN D CONDON JR
Plaintiff's Attorney:  DANIEL W MARRA
ORAL ARGUMENTS MADE TO THE COURT. COURT TO TAKE MATTER UNDER ADVISEMENT.

12/04/2007 Party(s):  LA POSA PROPERTY OWNERS ASSN
MOTION - MOTION SUMMARY JUDGMENT UNDER ADVISEMENT ON 12/04/2007
DONALD H MARDEN , JUSTICE

12/10/2007 FINDING - JUDGMENT DETERMINATION ENTERED ON 12/10/2007
DONALD H MARDEN , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
PARTIES/COUNSEL

ORDER - SUMMARY JUDGMENT ENTERED ON 12/10/2007
DONALD H MARDEN , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
PARTIES/COUNSEL
Judgment entered for LINDA TODEY and against LA POSA PROPERTY OWNERS ASSN.

12/10/2007 FINDING - FINAL JUDGMENT CASE CLOSED ON 12/10/2007

12/10/2007 Party(s):  LA POSA PROPERTY OWNERS ASSN
MOTION - MOTION SUMMARY JUDGMENT GRANTED ON 12/10/2007
DONALD H MARDEN , JUSTICE
COPIES TO PARTIES/COUNSEL

12/10/2007 Party(s):  LINDA TODEY
MOTION - MOTION SUMMARY JUDGMENT GRANTED ON 12/10/2007
DONALD H MARDEN , JUSTICE
COPIES TO PARTIES/COUNSEL

A TRUE COPY
ATTEST: _____
                    Clerk