STATE OF MAINE
Sagadahoc, ss.

PARKER HEAD ASSOCIATION, INC.

Plaintiff

v.

Docket No. BATSC-CV-11-013

ROBERT D. SPICKLER
and OLIVE S. SPICKLER

Defendants

## ORDER

This civil case came before the court for argument on the Defendants' Motion for Extension of Time to Amend Counterclaim. David Sinclair, Esq. appeared for the Plaintiff Parker Head Association, Inc. (PHA) and Defendant Robert Spickler appeared *pro se*. Defendant Olive Spickler, wife of Robert Spickler, did not appear.

Mr. Spickler explained that his wife is an invalid and likely will be unable to attend any court appearances. He advised that he planned to represent his wife through a power of attorney. The court responded that by law, only licensed attorneys may represent other individuals. *See* 4 M.R.S. § 807. In fact, the Supreme Judicial Court of Maine has specifically held that a person holding a power of attorney for someone else cannot represent the other person in court. *See Haynes v. Jackson,* 2000 ME 11, ¶15, 744 A.2d 1050, 1054. Mr. and Mrs. Spickler are free to represent themselves, but because neither is an attorney, neither can represent the other, even under a power of attorney. Mr. Spickler indicated that he is exploring obtaining legal counsel for himself and his wife in this case. The court encouraged him to make such arrangements as soon as he can.

The court did indicate that Mr. Spickler may be able to use a power of attorney to participate in Alternate Dispute Resolution (ADR) on behalf of his wife, since participating in court-ordered ADR is not the same as appearing in court.

1

The court agreed to treat the Defendants' Motion for Extension of Time to Amend Counterclaim as a motion to amend the counterclaim, rather than as a motion merely to extend the time for doing so. However, the proposed amended counterclaim is legally insufficient for several reasons: it purports to add a claim for loss of "the Shub venture" that plainly dates back to the late 1980's or early 1990's. It also purports to add a claim against a purported fiduciary, "Oliver Domonic," who is not identified anywhere in the amended counterclaim except in the prayer for relief. The deadline for joining additional parties has passed; the claim involving the Shub venture is time-barred, and the proposed amended counterclaim fails to state any cognizable claim against Oliver Domonic. Otherwise, the proposed amended counterclaim appears to track the original counterclaim, at least in a substantive sense. Because the proposed amendment would be futile, leave to amend must be denied.

The court also noted that the original counterclaim purports to name unidentified officers of PHA as counterclaim defendants, but does not allege any ground for imposing personal liability. Nor is there any indication that any officer has been served. Accordingly, Mr. Spickler was advised that the court is treating the counterclaim as being against the Association only, and being only for the damages alleged—for the loss in market value of Defendants' property resulting from lack of a boat slip, and for loss to Defendant Robert Spickler of the opportunity to go boating from that property.

The court also drew to Mr. Spickler's attention the fact that the expert witness designation he filed September 29 does not comply with the Scheduling Order because it does not contain the additional material required by M.R. Civ. P. 26(b)(4)(A)(1). The court will grant the Defendants time to fix that problem and also grant time for PHA to respond with its own designation.

The court lastly advised the parties that the case would likely be scheduled for trial in May of 2012 at the earliest. The discovery and summary judgment deadlines fall in late December and late January.

IT IS HEREBY ORDERED AS FOLLOWS:

1. Defendants' Motion for Extension of Time to Amend Counterclaim is denied.

2. Defendants' deadline for designating expert witnesses in compliance with the Scheduling Order and M.R. Civ. P. 26(b)(4)(A)(1) is hereby extended to October 18, 2011.

3. Plaintiff's deadline for designating experts is enlarged to December 19, 2011.

4. All other deadlines remain as set.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this order by reference in the docket.

Date: October 4, 2011

A. M. Horton
Justice, Superior Court

STATE OF MAINE

Sagadahoc, ss.

PARKER NECK ASSOCIATION, INC.

        Plaintiff,

  v.

ROBERT D. SPICKLER and
OLIVE S. SPICKLER

        Defendants

Docket No. SAGSC-CV-11-13

## DECISION AND JUDGMENT

The Plaintiff, Parker Neck Association, Inc. ("Parker Neck" or "Plaintiff") brings this Motion for Summary Judgment on its Complaint and on the Counterclaim of Defendants Robert D. and Olive S. Spickler. The motion has been fully briefed by each party and oral argument was held May 29, 2012.

### Statements of Material Fact and Objections

After consideration of the "Plaintiff's Statement of Material Facts" and Defendants' "Additional Statements of Material Facts" and the objections, denials and qualifications of each statement, the court finds the following facts are not in dispute.

At all relevant times, Defendant Robert D. Spickler was an officer and shareholder of R.D. Realty Corporation ("R.D"). (Defs. Add'l. SMF ¶ 1.) R.D. developed and marketed approximately 300 acres of real estate in the Town of Phippsburg, Maine, known as "Parker's Neck" or "Parker Head Neck" (the "Subdivision"). (Defs. Add'l SMF ¶ 1.) The plan of the Subdivision was prepared, recorded, and disseminated by R.D. in or about 1973. (Defs. Add'l SMF ¶ 2.) The original covenants governing the Subdivision were recorded at Book 393, Page

1

320 in early September 1973 and supplemental covenants were recorded at Book 393, Page 886 in October 1973. (Defs. Add'l SMF ¶4; Pl. SMF ¶ 10.) The original covenants contain two relevant provisions.[1] First:

> Commercial Establishments: No commercial establishments will be allowed, (including, but not limited to, restaurants, inns, rooming houses, shops, gas stations, auto repair shops, general repair shops and services, clubs or industry.) One club house may be built by R. D. Realty Corporation for residents only within the "Common" set aside for yacht club and/or beach club.

(Spickler Aff. Ex. A.) Second: "Common: All property owners shall have access to and use of that area designated as the 'Common', providing full observance of all 'Rules and Regulations' is maintained." (Spickler Aff. Ex. A.)

In 1974, R.D. prepared a sales brochure for the Subdivision. (Defs. Add'l SMF ¶ 9.) This brochure states that the Subdivision "offers a first class private marina and boat facility capable of accommodating fifty of the largest yachts as well as the smallest skiffs and slips deeded to each resident." (Defs. Add'l SMF ¶ 10.) In another section, the brochure again states, "all lots have deeded right [sic] to common waterfront and planned boat facilities." (Defs. Add'l SMF ¶ 11.) This brochure also features a drawing showing the yacht club facility and contains a map of the Subdivision designating the yacht club and marina at the southwestern tip of the property. (Defs. Add'l SMF ¶¶ 12, 13.) R.D. discussed the planned marina in detail with all lot purchasers and potential purchasers, including members of the Linscott family. (Defs. Add'l SMF ¶ 14.)

In or about 1975, R.D. sold a portion of the Subdivision to Freeman Linscott and/or members of his family. (Defs. Add'l SMF ¶ 16.) In December 1976, R.D. entered into a

---

[1] The Defendants attempt to characterize these two covenants in the Defendants' Additional Statements of Material Fact, paragraphs 5 and 6. The role of statements of material facts is not to "[purport] to describe the substance or to interpret the contents of documents." *Orient v. Dwyer*, 490 A.2d 660, 662 (Me. 1985). The interpretation of these two relevant provisions is a legal issue.

2

Memorandum of Agreement with Freeman Linscott, recorded in Book 458, Page 175, which states in part:

> R. D. Realty Corporation or its successors shall be obliged to offer any recreational or social facilities (such as boat slips, golf course, swimming pool or clubhouse) established for the common usage of purchasers of lots from R.D. Realty Corporation's land to purchasers of lots from the Linscott land on equal terms.

(Defs. Add'l SMF ¶¶ 17, 18; Pl. Reply to Add'l SMF ¶ 18.) In 1976-1977, R.D. and the Linscott family executed amended restrictions and covenants governing the Subdivision that were recorded in the Sagadahoc County Registry of Deeds at Book 456, Page 31. (Defs. Add'l SMF ¶ 19.) These amended restrictions and covenants contain a provision very similar to what was in the original covenants that states:

> No commercial establishments, whatsoever will be allowed...Excepting club houses and other structures, including [a] restaurant for residents and guest [sic] only may be built by R. D. Realty Corporation within the "Commons" set aside for yacht club and/or beach club and golf club.

(Pl. Reply Add'l SMF ¶ 20.) This document also states,

> R.D. Realty Corporation shall reserve the right to change or modify these covenants and restrictions by amendment hereto but no such change or modification shall have retroactive effect or shall otherwise in any substantial way change the character of the subdivision or otherwise affect any other lot previously sold....

(Defs. Add'l SMF ¶ 21.)

In 1986, R.D. conveyed its remaining interest in the area known as Parker Head Southwest to members of the Linscott family, including the area known as the "Commons" which was transferred to Dorothy Linscott by deed recorded in the Sagadahoc County Registry of Deeds at Book 746, Page 99. (Pl. SMF ¶ 11, Exs. 7, 8, 9.) R.D. also recorded an Assignment of Rights to Dorothy Linscott. (Pl. SMF ¶ 11, Ex. 10.) That assignment contains a paragraph stating:

> It is the purpose of this Assignment together with the three Quit Claim Deeds given by R.D. Realty Corporation to Craig Linscott, Dorothy Linscott and Michael Linscott...to eliminate R. D. Realty Corporation from all interest

3

whatsoever with respect to restrictive covenants and rights of enforcement or administration as such restrictive covenants may be recorded or otherwise affecting any land within the limits of the Subdivision known as Parker Head Southwest, Plan Book 11, Page 51, as aforesaid, while preserving those rights which remain necessary until the formation of the Lot Owners Association, as contemplated by said amended restrictions.

(Pl. Ex. 10.)

Before R.D. assigned these rights to Dorothy Linscott, Mr. Spickler discussed with her, in detail, the obligation to construct the marina. (Defs. Add'l SMF ¶ 26.) Ms. Linscott indicated that she understood; neither she, nor any member of her family, ever indicated that as R.D.'s successors they were not bound to construct the marina. (Defs. Add'l SMF ¶ 27.)

The deed to Michael Linscott, recorded in Book 746, Page 103 of the Sagadahoc County Registry of Deeds, conveyed, among other lots, Lot 7M. (Pl. Ex. 9.) This deed also states:

It is the purpose of this Quit Claim Deed to release any and all rights which the Grantor may have with respect to any and all restrictive covenants which may be recorded in the Sagadahoc County Registry of Deeds...It is intended by this conveyance that all restrictive covenants shall merge with the fee ownership of the above described premises, to be restated by the Grantee in any conveyances made by the Grantee hereafter of any of the aforesaid lots or property...The operation and effect of this deed shall be subject, however, to the Assignment of rights by R.D. Realty Corporation to Dorothy M. Linscott...

(Pl. Ex. 9.)

Lot 7M was then conveyed from Bernard Shub[2] to Lauren O. Spickler by deed dated July 1, 1988 and recorded at Book 934, Page 103. (Pl. SMF ¶ 5.) This deed conveyed Lot 7M subject to certain restrictive covenants, stated to "run with the land and be binding upon the Grantee, her heirs and assigns, according to the terms thereof," set forth in Exhibit A attached to the deed. (Pl. SMF ¶ 6.) Paragraph 11 of these restrictive covenants states:

Lot Owners Association: All owners of lots in the Subdivision shall automatically become members of the combined Subdivision Association of Parker Head-Southwest and Parker Head Colony, with such rights, privileges and responsibilities as are specifically set forth in the By-laws of that organization.

---

[2] The Statements of Material fact do not disclose the chain of title leading to Mr. Shub's ownership of Lot 7M.

4

(Pl. SMF ¶ 7, Ex 3.)

Lot 7M was then conveyed to Defendants Robert D. and Olive S. Spickler by deed from Lauren O. Spickler dated October 8, 1991 and recorded on April 4, 2005 in Book 2545, Page 315. (Pl. SMF ¶ 3, Ex. 1.)[3] This deed does not make any reference to the restrictive covenants. (Pl. Ex. 1.) This lot is a house lot and the Defendants have occupied it since the time of purchase. (Defs. Add'l SMF ¶ 28.) The Defendants claim that this purchase was made in reliance on the "covenant...to construct the marina in the common area." (Defs. Add'l SMF ¶ 29.)

The Parker Neck Association (the "Association") is a non-profit corporation existing under the laws of the State of Maine and was incorporated on February 23, 1989. (Pl. SMF ¶ 1.) The Association maintains written and recorded By-laws. (Pl. SMF ¶ 8.) These By-laws grant to the Association the power to assess, collect, and enforce the collection of dues and assessments from each lot owner and to charge interest, fees and costs for enforcement and to file liens against the respective owner's lot for failure to pay dues. (Pl. SMF ¶ 8.)

The Association alleges that the Defendants are subject to these By-laws because of the restrictive covenant contained in their chain of title and that the Defendants have failed to make dues payments. (Compl. ¶¶ 5, 8.) The Association's records reflect that the Defendants have made only one payment towards applicable dues and assessments from 2006 through 2011. (Pl. Reply to Add'l SMF ¶ 32; Supp. Nash Aff. ¶ 9, Ex. GNSA 1.) There is a genuine issue of material fact as to the amount owed.

---

[3] The lot has since been conveyed by quitclaim deed from both Defendants to Robert D. Spickler alone on March 28, 2011. (Pl. SMF ¶ 4.)

<u>Discussion</u>

1.    <u>Summary Judgment Standard</u>

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). In considering a motion for summary judgment, the court should view the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g.*, *Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702. The parties' Rule 56(h) statements must be adequately supported by a record citation setting forth the facts as would be admissible at trial. If statements are not adequately supported, the court may disregard them. M.R. Civ. P. 56(h)(4). Rule 56(h) requires a party that is opposing a motion for summary judgment to support any qualifications or denials of the moving party's statement of material facts with record citations. *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6, 770 A.2d 653. The Law Court has noted recently that "strict adherence" to the requirements of the rule is necessary. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 12, 21 A.3d 1015.

2.    <u>Complaint</u>

The Plaintiff brings one count in its Complaint, alleging breach of the Defendants' obligation to pay dues and assessments according to the Association's By-laws. It alleges failure to pay over the course of 2006 through 2011 and seeks $4,273.52 (as of December 31, 2011). The Plaintiff argues that the Defendants are subject to the Association's By-laws by virtue of ownership of a lot in the Subdivision and that the By-laws authorize the board to assess dues and assessments, which is a reasonable and therefore enforceable contractual provision. (Pl. Mot. 5-7.)

The Defendants' opposition relies primarily on the technical failures of the Plaintiff's motion but also disputes that they owe the amount of money sought, thereby raising an issue of material fact. (*Id.* at 4.)

The construction of a deed is a question of law. *Pettee v. Young*, 2001 ME 156, ¶ 8, 783 A.2d 637. The court must give the words their general and ordinary meaning and attempt to construe the language by only looking within the four corners of the document. *Id.* Only if the plain language of the deed creates an ambiguity may the court consider extrinsic evidence of the parties' intent. *Id.* This standard also applies when construing a restrictive covenant. *Silsby v. Belch*, 2008 ME 104, ¶ 7, 952 A.2d 218. Ordinarily, the determination as to whether a restrictive covenant runs with the land is determined by interpreting the written instrument. *Friedlander v. Hiram Ricker & Sons, Inc.*, 485 A.2d 964, 967 (1984). A restrictive covenant that runs with the land is binding on assignees. *Foxcroft v. Mallet*, 45 U.S. 353, 357 (1846).

The bylaws of a private organization are a valid enforceable contract between members of the association provided that they are not unreasonable nor contrary to public policy or statutory or constitutional requirements. *Gashgai v. Maine Med. Ass'n* 350, A.2d 571, 575, (1976) (*citing Libby v. Perry*, 311 A.3d 527 (Me. 1973)). Similar to a deed, a contract is interpreted based on the plain language used and, only if a term is susceptible to more than one meaning, and is thus ambiguous, may the court resort to extrinsic evidence to prove the meaning of the contract terms. *Camden Nat'l Bank v. S.S. Navigation Co.*, 2010 ME 29, ¶ 16, 991 A.2d 800.

The "Amended and Restated Bylaws of Parker Neck Association," dated January 2, 2008, grant to the Board of Directors the power to levy, assess and collect dues or assessments that are used for the purpose of promoting the health, safety, and welfare of the members of the association, including special assessments. (Pl. Ex. 4 at §§ 7.3 – 7.5.) These bylaws also give

7

the Board of Directors the authority to enforce the terms of the bylaws. (*Id.* at § 8.1.) These bylaws are not unreasonable nor contrary to any public purpose or statutory or constitutional requirement. They are therefore enforceable.

The Defendants acquired their title in lot 7M by virtue of a quitclaim deed from Lauren O. Spickler and are deemed to have constructive notice of any rights or responsibilities created in their chain of title. The plain language of the deed into Lauren Spickler makes the restrictive covenants binding on Lauren Spickler and her assigns. The Defendants have raised no issue of material fact to dispute the prior deed in their chain of title. Thus, the Plaintiff has demonstrated that the Defendants are subject to the By-laws of the "Subdivision Association of Parker Head-Southwest and Parker Head Colony." Although the Plaintiffs have not connected "Parker Neck Association," which was not incorporated until February 1989, with the "Subdivision Association of Parker Head-Southwest and Parker Head Colony," through a properly supported Statement of Material Fact, the Defendants conceded at oral argument that they are subject to the Parker Neck Association's imposition of dues and assessments.

Based on this concession, the Plaintiff has established the Defendants' liability for dues and assessments. However, construing the facts in the light most favorable to the non-moving party, the parties have generated a genuine issue of material fact on the amounts currently due. (*See* Defs. Add'l SMF ¶ 32; Pl. Reply SMF ¶ 32.)

3. Counterclaim

The Defendants brought a one count Counterclaim asserting a breach of contract claim arising from the Association's failure to construct a marina on the "common" land in the subdivision, which has allegedly decreased the market value of the Defendants' lot and deprived Mr. Spickler of the enjoyment of his hobby of boating.

8

The Plaintiff argues that the obligation to construct a marina never matured but, rather, the language that the Defendants point to was permissive and too vague to create a binding, enforceable obligation. (Pl. Mot. 7-9.) The Plaintiff then puts forward a series of arguments in the alternative, provided that the court were to find that there was indeed an obligation, arguing that the obligation was released by subsequent agreements, deeds, and assignments of rights. (*Id.* at 9.) If not released, the Plaintiff argues that it was the developer, not the Association who holds that obligation. (*Id.* at 9-10.) If the court finds that the Association carries the obligation, the Plaintiff argues that the covenant creating this obligation conflicts with a later covenant prohibiting any substantial change the character of the subdivision. (*Id.* at 10.) Lastly, the Plaintiff argues that it is entitled to prevail on statute of limitations, laches, waiver, release, acquiescence, ratification and/or ripeness doctrines. (*Id.* at 11-13.)

The Defendants again rely on the deficiencies of the Plaintiff's Statement of Material Facts. (Defs. Opp. 4.) With respect to the merits, the Defendants argue that they have shown that the language of the covenants impose an affirmative obligation to construct a marina and that even though the term "may" is used, in this context, it should be interpreted as being obligatory. (*Id.* at 4-5.) At the least, the use of the term "may" creates an ambiguity that allows the court to consider extrinsic parol evidence that the developer intended that the construction of the marina be mandatory and run with the land. (*Id.* at 5-6.) Next, the Defendants argue that the obligation could not have been "released" because it is a covenant that "runs with the land" and that the covenant prohibiting "substantial change" works in their favor because the marina was a central component of the Subdivision. (*Id.* at 6-7.) Finally, the Defendants argue against the affirmative defenses raised. (*Id.* at 7.) They state that the statute of limitations does not apply because this is an ongoing obligation of the Association and, because there is no deadline for construction in the covenant, the limitations period has not begun to run. Also,

9

they state that laches is inapplicable here because they are not seeking equitable relief and the Plaintiff has not demonstrated prejudice.

In order for a contract to be formed the parties must have a meeting of the minds as to the obligations of the agreement and those obligations must be sufficiently definite to allow the court to determine the legal liabilities of each party. *Corthell v. Summit Thread Co.*, 132 ME 94, 99 (1933). When there is a missing term in an agreement the court may supply a reasonable term, however, in certain cases, the fact of a missing term indicates a lack of assent to be bound. *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 19, 983 A.2d 382. Furthermore, under Maine law, a reservation clause granting one party an unlimited right to determine the nature and extent of his performance renders a promise illusory. *Millien v. Colby College*, 2005 ME 66, ¶ 9, 874 A.2d 397.

The court must interpret the language of contracts and deeds according to the plain language used and may only consider extrinsic evidence if the language used creates an ambiguity. *Pettee v. Young*, 2001 ME 156, ¶ 8, 783 A.2d 637; *Camden Nat'l Bank v. S.S. Navigation Co.*, 2010 ME 29, ¶ 16, 991 A.2d 800. Courts have consistently recognized that the term "may" is permissive and discretionary. *Gaeth v. Deacon*, 2009 ME 9, ¶ 17, 964 A.2d 621; *Lowry v. Comm'r*, 231 F. Supp. 981, 984-85 (D. Or. 2001). In certain narrow circumstances, namely when used to impose a public duty on a public official in doing something for the public good in which the public has an interest in the exercise of the power, the term "may" will be interpreted to be mandatory rather than permissive. *Schwanda v. Bonny*, 418 A.2d 163, 167 (Me. 1980).

"The sale of lots by reference to a plan conveys to the grantees and their successors the right to use the streets and other areas set aside on the plan." *Chase v. Eastman*, 563 A.2d 1099, 1102 n.2 (Me. 1989). "The object of the principle is, not to create public rights, but to secure to

10

persons purchasing lots under such circumstances those benefits, the promise of which, it is reasonable to infer, has induced them to buy portions of a tract laid out on the plan indicated." *Callahan v. Ganneston Park Dev. Corp.*, 245 A.2d 274, 278 (1968) (*quoting Lennig v. Ocean City Ass'n*, 7 A. 491 (N.J. 1886)). The right created is an "easement by implication based upon estoppel." *Id.* at 278. This doctrine is typically invoked with regard to rights of way depicted on a plan but does also apply to other areas designated. In *Ute Park Summer Homes Ass'n v. Maxwell Land Grant*, 427 P.2d 249 (N.M. 1967), the developer had designated an area on the plan as "golf course" but then sought to sell that lot without restriction as to use after inducing other purchasers with the plan. The court held that the lot owners had a legally enforceable right in the property to be kept as open space for the use and enjoyment of the purchasers.

The Defendants claim that the Association has an obligation to build a marina and that by not having done so it has breached that obligation. The Defendants point to the recorded plan,[*] the recorded covenants, and the sales brochure as the basis for this obligation. (*See* Counterclaim ¶¶ 2-5.)

However, the court is not persuaded that any and all of those materials established any affirmative obligation on the part of R.D. to construct the marina. First, the original covenants, recorded in Book 393, Page 320 in 1973, made between R.D. and its grantees, do not obligate the developer to construct a marina, yacht club, or beach club. The Defendants point to the phrase "One club house may be built by R.D. Realty Corporation for residents only within the 'Common' set aside for yacht club and/or beach club" and argue that the implication of this language is that the "Common" was set aside specifically for the purpose of building a club house for a yacht club and that R.D. intended to make the construction of the boathouse/marina a mandatory obligation of R.D. and its successors. (*See* Defs. Add'l SMF ¶¶

---

[*] The Plaintiff's motion does not focus on this argument but in order to defeat the Counterclaim at summary judgment this argument must be considered.

11

5-8.)[5] By reading this clause in the context of the whole document it becomes clear that this phrase is merely permissive because it is included as an exception to a general prohibition of commercial establishments. No ambiguity is created and there is no reason to interpret the word "may" in this context to be anything other than permissive language.

In the Defendants' Additional Statements of Material Fact, the Defendants also point to the Memorandum of Agreement, executed in 1976 and recorded at Book 458, Page 175, as evidence of the developer's obligation to provide boating facilities. (Def. Add'l SMF ¶ 18.) Again, when read in the context of the agreement, this statement referred to in paragraph 18, simply states that R.D "shall be obliged to offer any recreational or social facilities (such as boat slips, golf course, swimming pool or clubhouse)" on the same terms to both to purchasers of lots from R.D. Realty's land and to purchasers of lots from the Linscotts. This language is still permissive as to the actual construction and is also evidence that a marina was not specifically promised because the language of the covenant has transformed from "a yacht club or beach club" to "boat slips, golf course, swimming pool or clubhouse."

Second, the sales brochure cannot be the basis for any contractual obligation (even if the Defendants could prove that the Association has taken on the obligations of the developer) because the brochure contains a reservation clause making any promises contained therein "subject to alteration or withdrawal at the option of R. D. Realty Corp. at any time." (Pl. Reply SMF ¶ 10.) This reservation of an unlimited right to change the extent or nature of performance makes any promise contained therein illusory and non-binding.

Neither the terms of the recorded covenants not the terms of the sale brochure may be altered by any statement Mr. Spickler made to the Linscotts regarding any obligation to construct a marina because the terms of those documents are unambiguous. The court cannot

---

[5] These conclusory statements are considered as to the Defendants' argument and are not given any weight in the determination of material facts.

12

consider parol evidence when a document's terms are not reasonably subject to more than one interpretation.

Third, although the Defendants acquired title to their land in the Subdivision through a deed that conveys the lot by reference to a recorded plan and that plan allegedly contains an area designated as "Common" and depicts a marina for the use of all owners, this at most[6] creates a private easement right in the Defendants to use that land in accordance with the reservation in the plan. That is, the developer would be prohibited from developing that land or conveying it without use restrictions in accordance with the description on the plan. However, this does not create an affirmative obligation on the developer to actually construct the amenity.

The record thus conclusively establishes that no obligation to construct a marina ever arose from any of the mechanisms alleged by the Defendants. Because no obligation to construct the marina has arisen, it is unnecessary to determine whether that obligation was released or passed on to the Plaintiff.

IT IS ORDERED AS FOLLOWS:

(1) The Plaintiff's Motion for Summary Judgment on the Complaint is GRANTED in part. The Plaintiff has established that the Defendants are subject to the By-laws of the Parker Neck Association and that those By-laws permit the Association to impose dues and assessments on members. The remaining issue in the Complaint is the amount, if any, of dues and assessments owed by the Defendants;

(2) The Plaintiff's Motion for Summary Judgment on the Counterclaim is GRANTED. Judgment on the Counterclaim will be granted to the Plaintiff.

---

[6] The court does not decide this issue because the plan was not submitted in the record.

13

(3) The Clerk shall schedule a conference of counsel regarding the remaining aspects of this case.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this order by reference in the docket.

DATE: 3 July 2012

A. M. Horton
Justice, Superior Court

14

PARKER NECK ASSOCIATION, INC - PLAINTIFF

Attorney for: PARKER NECK ASSOCIATION, INC
DAVID A SINCLAIR  - RETAINED
LAW OFFICE OF DAVID A SINCLAIR PA
746 HIGH STREET
BATH ME 04530


vs
ROBERT D SPICKLER  - DEFENDANT
25 ROCK LEDGE DRIVE
PHIPPSBURG ME 04562
Attorney for: ROBERT D SPICKLER
DAVID M HIRSHON  - RETAINED
HIRSHON LAW GROUP PC
208 FORE STREET
PORTLAND ME 04101

OLIVE S SPICKLER  - DEFENDANT
25 ROCK LEDGE DRIVE
PHIPPSBURG ME 04562
Attorney for: OLIVE S SPICKLER
DAVID M HIRSHON  - RETAINED
HIRSHON LAW GROUP PC
208 FORE STREET
PORTLAND ME 04101


Filing Document: COMPLAINT
Filing Date: 04/07/2011

**Docket Events:**

SUPERIOR COURT
SAGADAHOC, ss.
Docket No  BATSC-CV-2011-00013

**DOCKET RECORD**

Minor Case Type: CONTRACT

STATE OF MAINE                                    SUPERIOR COURT
Sagadahoc, ss.


PARKER NECK ASSOCIATION, INC.

                    Plaintiff

        v.                                  Docket No. BATSC-CV-11-013

ROBERT D. SPICKLER
and OLIVE S. SPICKLER

                    Defendants

                              ORDER

        As a result of a conference of counsel January 8, 2013, IT IS HEREBY ORDERED AS

FOLLOWS:

        1.      Defendants' Emergency Motion to Discharge Clerk's Certificate is granted in part as

follows:

        a. Defendants may, but are not required to, obtain a discharge of the Association's lien
           claim and the clerk's certificate(s) reflecting that claim by causing $33,000.00 to be
           placed in escrow with attorney James Hopkinson as escrow agent.

        b. At closing of the sale of the Defendants' real estate, if the Defendants cause
           $33,000.00 to be paid over to attorney Hopkinson as escrow agent, the Association
           will deliver to Defendants such documents as are reasonably necessary to remove
           the Association's claims as an encumbrance on the real estate and enable the
           Defendants' property to be sold.

        c. Counsel for the parties shall confer before closing on the form of required documents
           and a procedure for effecting this order.

        d. If the escrow is established, attorney Hopkinson shall hold the funds until further
           order of this court.

        2.      By no later than February 1, 2013, Plaintiffs may file a motion for an award of

attorneys fees, with supporting materials, and a memorandum setting forth the legal and

factual basis for the requested award.   If such motion is filed, further briefing shall be as

provided in M.R. Civ. P. 7.

                                          1

3.     The clerk will schedule this case for a further conference and argument on pending motions on the court's March 5 civil motion list.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this order by reference in the docket.

Date:    January 8, 2013

_____

A. M. Horton
Justice, Superior Court

2

PARKER NECK ASSOCIATION, INC - PLAINTIFF

Attorney for: PARKER NECK ASSOCIATION, INC
DAVID A SINCLAIR  - RETAINED
LAW OFFICE OF DAVID A SINCLAIR PA
746 HIGH STREET
BATH ME 04530


vs
ROBERT D SPICKLER  - DEFENDANT
25 ROCK LEDGE DRIVE
PHIPPSBURG ME 04562
Attorney for: ROBERT D SPICKLER
DAVID M HIRSHON  - RETAINED
HIRSHON LAW GROUP PC
208 FORE STREET
PORTLAND ME 04101

OLIVE S SPICKLER  - DEFENDANT
25 ROCK LEDGE DRIVE
PHIPPSBURG ME 04562
Attorney for: OLIVE S SPICKLER
DAVID M HIRSHON  - RETAINED
HIRSHON LAW GROUP PC
208 FORE STREET
PORTLAND ME 04101


SUPERIOR COURT
SAGADAHOC, ss.
Docket No  BATSC-CV-2011-00013

**DOCKET RECORD**

Filing Document: COMPLAINT          Minor Case Type: CONTRACT
Filing Date: 04/07/2011

**Docket Events:**

STATE OF MAINE                                    SUPERIOR COURT
Sagadahoc, ss.

PARKER NECK ASSOCIATION, INC.

                        Plaintiff

            v.                              Docket No. BATSC-CV-11-013

ROBERT D. SPICKLER and OLIVE S. SPICKLER

                        Defendants

                          JUDGMENT

        Judgment on the Complaint is hereby awarded to Plaintiff Parker Neck Association, Inc.

against Defendants Robert D. Spickler and Olive M. Spickler jointly and severally in the

amount of $5,808.25. *See Stipulation* (Dec. 31, 2012). In addition to said amount, Plaintiff is

hereby awarded $13,800.00 for its reasonable attorneys fees and costs against the Defendants,

jointly and severally. *See Order on Attorney Fees and Costs* (Mar. 13, 2013). Post-judgment

interest shall accrue on the foregoing amounts.

        Judgment on the Counterclaim is hereby awarded to Plaintiff and against Defendants.

No further costs are due.

        This is a final judgment as to all claims and parties.

        Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Judgment

by reference in the docket.

Date:   March 13, 2013                   _____
                                         A. M. Horton
                                         Justice, Superior Court

1

STATE OF MAINE                                           SUPERIOR COURT

Sagadahoc, ss.


PARKER NECK ASSOCIATION, INC.

                              Plaintiff

              v.                              Docket No. BATSC-CV-11-013

ROBERT D. SPICKLER and OLIVE S. SPICKLER

                              Defendants


ORDER ON ATTORNEY FEES AND COSTS

The Motion for Attorneys' Fees and Costs, Treble Damages and Injunctive Relief

filed by Plaintiff Parker Neck Association, Inc. is before the court, together with the

Defendants' opposition thereto. Oral argument was held March 5, 2013.

Based on the entire record, the court grants the Motion in part for the reasons set

forth below.

*Background*

The Association is a nonprofit corporation organized and operating as the lot

owners' association for the Parker Neck residential community in Phippsburg, Sagadahoc

County, Maine.    The purposes and functions of the Association are specified in the

Amended and Restated Bylaws of Parker Neck Association, recorded in the Sagadahoc

County Registry of Deeds, Book 3067, Page 60, and filed in the case in connection with the

Plaintiff's Motion for Summary Judgment.

This action was commenced in the West Bath District Court April 7, 2011 with the

docketing of the Association's complaint to recover dues and assessments, as well as

1

interest and costs, totaling $3,136.31, assessed against property of Defendants Robert and Olive Spickler—property that the Association contended was located within the area subject to the Association.

The Defendants, proceeding *pro se*, responded to the complaint by removing the case to Superior Court, and filing an answer and counterclaim. The Defendants' answer to the complaint, docketed April 25, 2011, denied essentially all of the material elements of the complaint, including paragraph 4 of the complaint, which alleged that they owned the property at issue. The Defendants in their answer also stated, "The Defendants' forth-coming Counterclaim shows that their claims are unfounded," presumably referring to the Association's claim in the complaint. The Defendants' counterclaim alleged that the Association was in breach of an obligation to build a marina that would have benefited the Defendants' property.

From the outset, the case was contested and did not progress smoothly. Mediation had to be rescheduled, *see* Plaintiff's Notice of Parties' Updated Arrangements for Alternative Dispute Resolution. When it did occur on October 5, 2011, mediation was unsuccessful. *See* Report of ADR Conference and Order dated October 7, 2011. The parties also skirmished on the issue of designation of expert witnesses.

The Standard Scheduling Order dated April 27, 2011 set an August 27, 2011 deadline for joinder of parties and motions to amend the pleadings. On August 22, 2011, a few days before the deadline, Defendant Robert Spickler filed a Motion for Extension of Time to Amend Counterclaim. (That motion was filed by Robert Spickler only and refers to "his counterclaim," suggesting that the counterclaim was by Mr. Spickler only).

2

However, on August 30, 2011, Mr. Spickler filed an "Amended Counterclaim" dated August 29, 2011.[1]

On September 2, 2011, the Association filed an objection to the Motion for Extension of Time, to which the Spicklers responded on September 12, 2011 with a Response indicating that "the original Motion for Extension of Time became moot" as a result of the filing of the Amended Counterclaim on August 29. For two reasons, the Defendants' premise was incorrect. First, the Amended Counterclaim was required to be presented by motion, not simply filed. The Standard Scheduling Order setting the deadline says that "motions to amend pleadings may not be filed later than 4 months from the date of this order," making it clear that even a timely amendment has to be requested by motion. Second, the Amended Counterclaim was in any case filed after the August 27, 2011 deadline. For both reasons, the court did not consider the Motion to Extend moot, and scheduled it for argument on October 4, 2011.

At the oral argument, the parties (excluding Mrs. Spickler, who was not present) discussed a number of issues. The discussion was summarized in the Order dated October 4, 2011. Of particular significance to the present Motion is the discussion of the futility of the proposed Amended Counterclaim. The oral argument may have been electronically recorded, but there is no transcript available and the court does not have a clear recollection of what was discussed. However, the discussion on October 4 and the court's subsequent order clearly signaled the court's doubts about the viability of the counterclaim, not just in the proposed amended form, but initially. No dispositive motion addressed to the

---

[1] The Amended Counterclaim is also unclear as to whether it is being asserted by both Mr. & Mrs. Spickler, or just by Mr. Spickler.

[2] The Association may have meant to request treble costs, which can be awarded in exceptional

3

counterclaim was then pending, and the court therefore limited its action to denying the Motion for Extension of Time on the ground that the proposed amendment would be futile.

Mediation occurred the very next day—October 5, 2011—and, as noted above, it was unsuccessful.

The next major development in the case was the Association's filing of a motion for summary judgment as to both its complaint and the Defendants' counterclaim. With its motion, the Association submitted an affidavit claiming that the Spicklers owed $4,273.52 as of that date for expenses assessed, interest and costs. By this time, the Spicklers had obtained counsel, and they filed an opposition to the motion. The opposition materials included an affidavit in which Mr. Spickler averred, "I am positive that we do not owe the Association $4,273.52 or anything close to that amount."

The court held oral argument May 29, 2012. At oral argument, the Spicklers through their counsel conceded, for the first time in the case, that they were "subject to the Parker Neck Association's imposition of dues and assessments." Decision and Judgment at 8 (July 3, 2012).

Based in part on Mr. Spickler's affidavit denying that the Defendants owed "anything close" to the amount claimed, the court denied the Association's motion for summary judgment as to the amount owed. *See id.* However, the court granted summary judgment on the counterclaim, mainly on the ground that the Defendants had failed to present any evidence that there of an affirmative obligation to build a marina on the part of R.D. Realty, the original developer, and therefore the Association, even if it were deemed a successor interest, had no such obligation. *See id.* at 11-13.

4

After issuing the Decision and Judgment, the court scheduled a conference of counsel on September 4, 2012, at which counsel for the parties were encouraged to come to agreement on the only remaining issue. No such agreement was reached, and the court set a hearing for November 6, 2012. Defendants then moved to continue. The Association objected, in part on the ground that the Defendants were unresponsive to the Association's efforts to develop agreement on the dollar amount owed by the Defendants. *See* Plaintiff's Opposition to Defendants' Motion to Continue. However, the court granted the motion.

The next development occurred December 14, 2012, when the Spicklers filed an Emergency Motion to Discharge Clerk's Certificate, asserting that the Association's liens were preventing them from closing on a contract to sell their property to their daughter. The court held a telephonic conference with counsel regarding the motion on December 19, 2012, encouraging the parties to resolve the matter by agreement, but declining to act immediately on the motion. A hearing was set for January 8, 2013. Thereafter, the parties entered into a stipulation that, as of December 31, 2012, the Defendants jointly and severally owed $5,808.25 in dues, assessments and interest.

On January 8, 2013, the court convened a hearing on the Defendants' Emergency Motion, which by then had been opposed in writing by the Association, and issued an order that the Defendants could obtain a discharge of liens by depositing a sum in escrow. The record is not clear whether the Defendants exercised that opportunity.

On January 31, 2013, the Plaintiff filed the present Motion For Award of Attorneys' Fees and Costs, Treble Damages and Injunctive Relief. The Defendants oppose the Motion on a variety of grounds, discussed in detail below.

*Analysis*

5

The Plaintiff Association seeks a total award of more than $35,000 for its attorney fees and costs, and it seeks treble damages and injunctive relief. The court declines to award treble damages, because it sees no basis in law for doing so[2], and because even if they were available, they are not justified here. Likewise, the court declines to grant the injunctive relief requested.

However, the court does find and conclude that Plaintiff is entitled to an award of a portion of its fees and costs based on the Association's Bylaws. "An award of attorney fees must be based on: (1) a contractual agreement between the parties; (2) a specific statutory authorization; or (3) the court's inherent authority to sanction serious misconduct in a judicial proceeding." *Truman v. Browne*, 2001 ME 182, ¶ 13, 788 A.2d 168, 171.

In this case, the Association's Bylaws supply a contractual basis on which the Association can recover its attorneys fees and costs incurred in collecting assessments such as those claimed in its complaint in this case. Section 7.9 of the Bylaws says that if an assessment is not paid in 30 days, "the Association may bring an action at law against the owner personally obligated to pay the same and/or to foreclose the lien and there shall be added to the amount of the assessment the costs of preparing and filing the complaint in the action, and in the event a judgment is obtained, the judgment shall include Interest on the assessment as above provided and reasonable attorney's fees, together with the costs of the action." Section 8.2 of the Bylaws provides similarly for the Association to recover its reasonable attorney fees and costs incurred in an action to enforce the Bylaws or Declaration against a member in breach or in violation.

---

[2] The Association may have meant to request treble costs, which can be awarded in exceptional circumstances. The court is not aware of any legal basis for treble damages in this instance.

The Defendants argue that section 7.9 limits the Association's recoverable costs to the costs of preparing and filing the complaint. They say the reference to "reasonable attorneys fees, together with . . . costs" when a judgment is obtained does not apply here because the Association is not entitled to obtain a judgment. They say the Association is not entitled to a judgment because the Spicklers have paid the amount they belatedly stipulated that they owe for dues, assessments and interest.

For several reasons, the court disagrees. First, the alleged payment is not of record—the Stipulation docketed December 31, 2012 says only that the parties agree that the Defendants owe a certain amount in dues, assessments and interest, not that that amount has been paid. Second, there is no evidence in the record that the Association agreed to accept or apply the alleged payment, assuming it was made, in satisfaction of its claim for dues, assessments and interest. Third, section 8.2 of the Bylaws permits the Association to recover reasonable attorneys fees and costs in an action to enforce the Bylaws or Declaration against a member in breach, without any prerequisite of obtaining judgment. Fourth and finally, the Defendants' last-minute capitulation to the Association's claim, after years of what in hindsight appears to be baseless opposition, does not defeat the Association's entitlement to fees and costs incurred in collection. For all of these reasons, the Association is entitled to judgment for the stipulated amount owed, plus any attorney fees and costs awarded on the present Motion. (Of course, if the Defendants have made any payment toward their obligations, they are entitled to have it applied in satisfaction of judgment).

7

For these reasons, the court concludes that the Association is entitled to obtain its reasonable attorneys fees and costs incurred in collecting dues, assessments and interest from the Defendants.

The Association argues that its entitlement goes beyond costs of collection and includes the cost of defending against the Defendants' counterclaim, based on the court's authority to assess attorney fees.

> The court's authority to award attorney fees may be determined by statute, by the 'American Rule' at common law that generally prohibits taxing the losing party in litigation with a successful opponent's attorney fees, or by certain recognized common law authorizations of attorney fees." A trial court possesses inherent authority to sanction parties and attorneys for abuse of the litigation process. Such authority should be used sparingly, however, and sanctions should be imposed only when the abuse of the process by parties or counsel is clear. This inherent authority to award attorney fees, as an exception to the well-established American Rule that parties are responsible for the payment of their own attorney fees, should be exercised only in the most extraordinary circumstances. Attorney fees may not be awarded as a sanction in the absence of significant bad faith on the part of a litigant or his agents.

> *Cimenian v. Lumb*, 2008 ME 107, ¶ 11, 951 A.2d 817 (internal citations and quotation marks omitted). *See also Linscott v. Foy*, 1998 ME 206, 716 A.2d 1017.

Whether the Defendants deserve to be sanctioned through an attorney fee award for asserting and then pursuing their counterclaim is a close question. Mr. Spickler was the principal of R.D. Realty at the time the alleged marina obligation came into being, so he of all people should have known that R.D. had made no binding commitment to build a marina. Moreover, the court at the October 4, 2011 hearing and in its order clearly signaled doubt as to the viability of the counterclaim, but the Spicklers continued to pursue it. Ultimately, however, the court is unable to conclude that the "extraordinary circumstances" supporting the requested sanction are present here. However, with the court's ruling on summary judgment, the Spicklers are now on notice that the continued assertion of claims

8

in the nature of their counterclaim against the Association or anyone affiliated with the Association may result in such sanctions.

In the alternative, the Association argues that it should be awarded all of its attorney fees and costs on the ground that its effort to collect dues, assessments and interest from the Spicklers is "inextricably intertwined" with its defense of the Spicklers' counterclaim. *See Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶ 18, 828 A.2d 210. There is much merit to this contention. As noted above, the Spicklers in their answer denied owning the lot on which the dues and assessments were made, and they denied that they owed dues and assessments. The Spicklers took the position that their lot was not subject to dues and assessments. (Even at the March 4, 2013 oral argument on the present motion, the Spicklers through their counsel asserted that nothing in the Bylaws required them to pay dues and assessments on their lot). Based on these sweeping objections and defenses to its claim, the Association needed to do much, but likely not all, of the same title and other real property work in order to prove its collection claim that it had to do in response to the counterclaim.

The total amount in fees and costs requested by the Association is $35,349.01. The court finds nearly all of the requested attorney fees to be reasonable in light of the applicable criteria. *See Mancini v. Scott*, 2000 ME 19, ¶ 10, 744 A.2d 1057, 1061, *citing Poussard v. Commercial Credit Plan, Inc. of Lewiston*, 479 A.2d 881, 884 (Me. 1984). About $800 of the itemized services appear not to relate to the litigation and are therefore excluded. The requested costs and disbursements are recoverable. In round numbers, the court finds the Association's reasonable fees and costs to total $34,500. However, the remaining question is whether there is a practical means of separating out non-recoverable fees—meaning, in this case, the fees solely attributable to the counterclaim—from the recoverable fees—those

9

attributable solely to the collection claim or attributable to both to collection claim and the counterclaim.

At the court's request, the Association's counsel in their fee submittals identified those tasks associated solely with the collection effort and those associated solely with the counterclaim, and those associated with both. The Association's counsel attribute most of the more than $35,000 requested to recoverable fees—fees incurred entirely or in part in the collection claim.

The circumstances of this case resemble those in *Baker v. Town of Woolwich*, in which the court applied an "even split" to allocate fees between claims on which fees were recoverable and those on which they were not. 517 A.2d 64, 69 (Me. 1987). The Law Court in *Baker* endorsed an "even split as a fair and equitable resolution of a problem for which there is available no better answer." *Id.* As in *Baker*, there was in this case substantial overlap in the issues between the claims on which attorneys fees are recoverable and those on which they are not. In particular, the extensive title work involved here was relevant both to the collection claim in light of the Spicklers' pervasive denials and to defense of the counterclaim. As in *Baker*, the same court appearances were involved in both sets of claims.

However, a literal "even split" in this case would not be fair to the Spicklers because the Association's fee application acknowledges that some of its fees and costs were attributable solely to the counterclaim and therefore are not recoverable. Accordingly, the court awards the Association 40%, rather than half, of its reasonable fees and costs, and finds and concludes further that this award of $13,800 is "a fair and equitable resolution of a problem for which there is available no better answer." A more nuanced allocation is not feasible.

10

The fact that the award of fees and costs is more than two times the amount of the Association's claim is noteworthy but in context does not call the award into question. In a real sense, the Association is correct in claiming that it had to overcome the Spicklers' counterclaim in order to prevail on its own claim. Instead of denying that they owed anything or claiming that any fees owed were offset by the counterclaim, the Spicklers could have terminated their liability for attorneys fees and costs at any time by doing what they finally did at the eleventh hour—stipulating as to what they owed. Thus, they have only themselves to blame for the fact that they are liable to the Association for far more than they would have had to pay had they promptly acknowledged their obligations.

IT IS HEREBY ORDERED THAT the Plaintiff's Motion for Attorneys' Fees and Costs, Treble Damages and Injunctive Relief is hereby granted in part. Plaintiff is hereby awarded attorney fees and costs of $13,800. Plaintiff's Motion is otherwise denied.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this order by reference in the docket.

Date: March 13, 2013

A. M. Horton
Justice, Superior Court

11

PARKER NECK ASSOCIATION, INC - PLAINTIFF

Attorney for: PARKER NECK ASSOCIATION, INC
DAVID A SINCLAIR - RETAINED
LAW OFFICE OF DAVID A SINCLAIR PA
746 HIGH STREET
BATH ME 04530


vs
ROBERT D SPICKLER - DEFENDANT
25 ROCK LEDGE DRIVE
PHIPPSBURG ME 04562
Attorney for: ROBERT D SPICKLER
DAVID M HIRSHON - RETAINED
HIRSHON LAW GROUP PC
208 FORE STREET
PORTLAND ME 04101

OLIVE S SPICKLER - DEFENDANT
25 ROCK LEDGE DRIVE
PHIPPSBURG ME 04562
Attorney for: OLIVE S SPICKLER
DAVID M HIRSHON - RETAINED
HIRSHON LAW GROUP PC
208 FORE STREET
PORTLAND ME 04101

SUPERIOR COURT
SAGADAHOC, ss.
Docket No  BATSC-CV-2011-00013

**DOCKET RECORD**

STATE OF MAINE                                    SUPERIOR COURT
Sagadahoc, ss.                                    AMH - SAG - 5/7/2013

PARKER NECK ASSOCIATION, INC.

                    Plaintiff

          v.                              Docket No. BATSC-CV-11-013

ROBERT D. SPICKLER and OLIVE S. SPICKLER

                    Defendants

          ORDER ON PLAINTIFF'S MOTION FOR RELIEF FROM ORDER

Plaintiff's Motion for Relief from Order filed pursuant to M.R. Civ. P. 60(b) is before the court, together with Defendants' opposition thereto and Plaintiff's reply memorandum. The court elects to decide the motion without oral argument, *see* M.R. Civ. P. 7(b)(7).

The motion asks the court to correct what Plaintiff Parker Neck Association, Inc. asserts is a mathematical error in the court's award of attorney fees in its Order On Attorney Fees and Costs dated March 13, 2013 and the Judgment dated the same day.

For two reasons, the court denies the Plaintiff's Motion for Relief from Order.

First, as the Defendants point out, the relief sought in Plaintiff's Motion for Relief is a change in the Judgment that could have been sought through a Rule 59 motion or an appeal. Plaintiff's Motion is not based on a change of circumstance after judgment, on newly discovered information, or on any other basis cognizable under Rule 60(b) of the Maine Rules of Civil Procedure.

The second reason for denial is that the Plaintiff's Motion rests on a mistaken assumption. Plaintiff asserts that the court made a mathematical error by awarding Plaintiff 40% of its entire claim for attorney fees and costs, instead of awarding Plaintiff all of the more than $14,000 that Plaintiff allocates to its collection effort and adding to that amount 40% of the balance. Plaintiff's mistaken assumption is that the court in its Order on Attorney Fees

1

and Costs ever adopted Plaintiff's allocation of its fees and costs between the collection effort and the defense of counterclaims. In fact, the very reason that the court elected to apply a variant of the "even split" approach, using a 40% multiplier for the reasons stated, to the $34,800 total of reasonable fees and costs incurred by Plaintiff was because the court did not accept either side's characterization of recoverable fees and costs.

For the foregoing reasons, Plaintiff's Motion for Relief from Order is denied.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Judgment by reference in the docket.

Date:   May 7, 2013

_____
A. M. Horton
Justice, Superior Court

2

Attorney for: PARKER NECK ASSOCIATION, INC
DAVID A SINCLAIR  - RETAINED
LAW OFFICE OF DAVID A SINCLAIR PA
746 HIGH STREET
BATH ME 04530

SUPERIOR COURT
SAGADAHOC, ss.
Docket No  BATSC-CV-2011-00013

**DOCKET RECORD**

vs
ROBERT D SPICKLER  - DEFENDANT
25 ROCK LEDGE DRIVE
PHIPPSBURG ME 04562
Attorney for: ROBERT D SPICKLER
DAVID M HIRSHON  - RETAINED
HIRSHON LAW GROUP PC
208 FORE STREET
PORTLAND ME 04101

OLIVE S SPICKLER  - DEFENDANT
25 ROCK LEDGE DRIVE
PHIPPSBURG ME 04562
Attorney for: OLIVE S SPICKLER
DAVID M HIRSHON  - RETAINED
HIRSHON LAW GROUP PC
208 FORE STREET
PORTLAND ME 04101

Filing Document: COMPLAINT                          Minor Case Type: CONTRACT
Filing Date: 04/07/2011

## Docket Events:

04/15/2011 TRANSFER - REMOVAL TO SUPERIOR COURT EDI ON 04/15/2011 at 06:00 p.m.
           TRANSFERRED CASE: SENDING COURT CASEID WESDCCV201100107

           FILING DOCUMENT - COMPLAINT FILED ON 04/07/2011

           Party(s):  PARKER NECK ASSOCIATION, INC
           ATTORNEY - RETAINED ENTERED ON 04/07/2011
           Plaintiff's Attorney: DAVID A SINCLAIR

           CERTIFY/NOTIFICATION - CLERK CERTIFICATE ISSUED ON 04/08/2011

           Party(s):  ROBERT D SPICKLER,OLIVE S SPICKLER
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 04/07/2011

           Party(s):  ROBERT D SPICKLER,OLIVE S SPICKLER
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 04/01/2011

           CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 04/07/2011

           Party(s):  ROBERT D SPICKLER,OLIVE S SPICKLER
           JURY FILING - DEMAND FOR JURY TRIAL FILED ON 04/15/2011
           FILED BY PRO SE DEF'S